540 So.2d 30 (1989)
ESTATE OF Kenneth Ray ROBINSON, Deceased by Stella JENNINGS, Administratrix
v.
Eric Ray GUSTA, a Minor, by his Mother and Next Friend, Alice GUSTA.
No. 58183.
Supreme Court of Mississippi.
March 8, 1989.
*31 Anita Mathews Stamps, Stamps & Stamps, Jackson, for appellant.
Marshall Sanders, Vicksburg, for appellee.
Before ROY NOBLE LEE, ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:

I.
Eric Ray Gusta, plaintiff below and appellee here, acting by and through his mother and next friend, Alice Gusta, petitioned the Chancery Court of Claiborne County, Mississippi, under Mississippi Code Annotated, Section 91-1-15 (Supp. 1988), for an adjudication that he was the sole and lawful heir of Kenneth Ray Robinson, deceased. On May 17, 1986, the chancery court entered final judgment declaring Eric to be Robinson's son and heir and providing that he should inherit from Robinson as otherwise provided by law.
Stella Jennings, administratrix of the Estate of Kenneth Ray Robinson, defendant below, timely appealed and assigns the following as errors:
1. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE LOWER COURT'S VERDICT IN FINDING THAT ERIC HAD PROVEN HIS CASE BY CLEAR AND CONVINCING EVIDENCE.
2. THE TRIAL COURT ERRED IN DENYING THE ROBINSON ESTATE A JURY TRIAL IN THE HEIRSHIP AND PATERNITY PROCEEDINGS.
We find that the assignments of error are without merit and therefore affirm the ruling of the chancery court.

II.
Alice Gusta (Gusta), Eric's mother, met Kenneth Ray Robinson in August 1981. Subsequently, their relationship grew closer. Robinson spent the night at Gusta's home, they slept together, and engaged in sexual intercourse. Gusta eventually became pregnant in February 1982, and gave birth to Eric on November 24, 1982. After the birth of Eric, Robinson continued to stay with Gusta off-and-on, i.e., he stayed between her home in Vicksburg and his father's home in Port Gibson until his death.
On April 4, 1984, while permissively driving Gusta's car, Robinson was killed in an automobile accident. Robinson died intestate.
Prior to Robinson's death, Gusta reviewed his 1983-84 tax return. The return requested the first name of dependent children living with Robinson and the total number of exemptions claimed. Robinson *32 responded by listing Eric and the number "2" (himself and Eric), respectively. The return was signed by Robinson and dated 1/25/84, in the presence of Gusta.
Robinson filed for food stamps and used Gusta's address as he had on the tax return, since he "spent a lot of time" there with her and Eric.[1] Testimony by Gusta about the food stamps applications was corroborated by two witnesses from the Warren County Welfare Department, and admissibility into evidence of the applications. On the applications Robinson listed Eric as his son. Robinson's signature was at the end of both applications.
Robinson's father testified that Robinson maintained residence with him in Port Gibson; but acknowledged that Robinson also stayed in Vicksburg at a residence unknown to him. Robinson's father, however, did not know Gusta or Eric and had never seen them prior to Robinson's funeral.
On May 26, 1984, Robinson's brother, Charlie, and his girlfriend Thelma Stewart (Stewart) went to Gusta's home to visit her. When asked about the purpose of the visit, Stewart testified to the following:
Well, he said that he just wanted to go see her and, you know, I said okay, and he said, "Well, I'm going to tell you why I want to see her," said, "Kenny say he was supposed to be the father of her child." He say, "I just want to go up there and see how she doing."
Q. Do you know why he (Charlie) went over there?
A. Well, he said he was going to see her (Gusta) and he told me that Kenny said that he was supposed to be the father of a little boy.
Stewart's testimony was a surprise to defense, because her purpose was to discredit Gusta's moral character by showing another man had moved in with Gusta shortly after Robinson's death (less than two months).
Charlie testified that Robinson lived between Vicksburg and Port Gibson. He saw Eric approximately one month prior to Robinson's death when he visited Robinson at Gusta's home. Robinson never denied or claimed Eric as his son to Charlie.
At trial Robinson's sister-in-law testified that she never had seen Eric with the exception of at Robinson's funeral, and that Robinson never told her he had a son.
Margie Bryant, Robinson's sister, testified at trial that she and Robinson saw Gusta while pregnant "at a distance" in 1982. Robinson told Bryant that "she (Gusta) was nothing to him," and "it's not my baby... . I don't have anything to do with her, no more than friends." Bryant admitted, however, on cross-examination that at that time she knew Robinson and Gusta lived together off-and-on. Robinson did not approach Gusta on this particular day. Bryant never saw Robinson with Eric, even at family gatherings.
Two slips of paper found in Robinson's wallet after his death were admitted into evidence at trial. They showed the address of Robinson on March 6 and 8, 1984. The addresses were the same as those used on Robinson's 1983-84 tax return and food stamp applications.

III.
Eric filed his action in the Chancery Court of Claiborne County on January 18, 1985, slightly less than ten months after Robinson's death. Robinson's estate answered and demanded trial by jury on the issue of paternity, citing the Mississippi Uniform Law on Paternity, Miss. Code Ann., § 93-9-15 (1972). The chancery court empaneled a jury, but stated to the parties from the outset that the jury's verdict would be regarded as advisory only. In due course, the jury found by a vote of 10-2 that Robinson was not the father of Eric. Thereafter, the chancery court, apparently regarding the jury's verdict as more than merely advisory, granted Eric's motion for a judgment notwithstanding the verdict and entered final judgment declaring that Robinson was Eric's father.
*33 On this appeal, much of the argument of the parties concerns Robinson's estate's right vel non to trial by jury and the effect of the verdict of the jury empaneled. The argument misses the mark, for in this case, no party had the right to trial by jury. On January 28, 1985, our law afforded Eric at least two claims that he might have presented against Robinson's estate. First, because less than a year had elapsed since Robinson's death, Eric may have sued for support and maintenance under the Uniform Law on Paternity. Miss. Code Ann. §§ 93-9-9 and -15 (Supp. 1988). Second, Eric could have sued under Miss. Code Ann. § 91-1-15 to establish heirship[2].
We interpret Eric's complaint as one to establish heirship only. In pertinent part, § 91-1-15(3)(c) provides:
(3) An illegitimate shall inherit from and through the natural father and his kindred ... according to the statutes of descent and distribution if:
.....
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under §§ 91-1-27 and 91-1-29... .
Sections 91-1-27 and -29 require that paternity be established before an illegitimate can inherit by intestate succession. Section 91-1-27 provides that heirship proceedings may be brought in chancery court. Nothing in that section affords either party to a right of trial by jury. By way of contrast, the only source of a right of trial by jury on the issue of paternity is the Uniform Law on Paternity. Section 91-1-15 appears in the chapter of our Code regarding descent and distribution. Nothing in that statute, nor for that matter, that chapter provides a right of trial by jury on any issue.

IV.
We turn now to Robinson's estate's challenge to the sufficiency of the evidence to support a finding of paternity. In reviewing the decision below, we must keep in mind that Eric had the burden of proving paternity by clear and convincing evidence. Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1988); Crosby v. Triplett, 195 So.2d 69, 71 (Miss. 1967); Hulitt v. Jones, 220 Miss. 827, 832, 72 So.2d 204, 206 (1954).
Under our scope of review of findings of fact made by a trial judge sitting without a jury, this Court will not reverse such findings where they are supported by substantial, credible evidence in the record. Put otherwise, we will not reverse a finding of fact unless we regard it clearly erroneous, that is, although there is evidence to support it, we are on the entire evidence left with the definite and firm conviction that a mistake has been made. See, Jones v. Jones, 532 So.2d 574, 578, 581 (Miss. 1988); UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc. 525 So.2d 746, 753-54 (Miss. 1987). Where, as here, the issue presented on appeal is one with respect to which at trial the appellee bore the burden of proof by clear and convincing evidence, we inquire whether the record contains evidence of sufficient quality and quantity that a rational trier of fact could have concluded that the fact had been proved by clear and convincing evidence. Blissard v. White, 515 So.2d 1196, 1200 (Miss. 1987).
We are confronted today with a situation where a trial judge resolved the factual issue in favor of appellee, but en route to his decision, he applied the wrong standard. In spite of his preliminary announcement that the jury would sit only in an advisory *34 capacity, the chancery court in the end, treated Eric's post-trial motion as a motion for judgment notwithstanding the verdict. When he did so, he necessarily applied the strict standard which severely limits the power of a trial judge to disturb a finding of fact made by a jury. See, e.g., Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988); Stubblefield v. Jesco, Inc. 464 So.2d 47, 54 (Miss. 1984); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
Where a trial court applies to a party bearing the burden of proof a stricter standard than the law provides, we must necessarily reverse and remand. This follows necessarily from the reality that the evidence may have been sufficient to meet the correct standard, while at the same time failing to convince the court according to the higher standard. Conversely, when a party prevails at trial, under a standard of proof less than the law requires, we again must reverse for reconsideration to determine whether that party's evidence was adequate under the correct and stricter standard. See, McGory v. Allstate Ins. Co., 527 So.2d 632 (Miss. 1988).
Here the chancery court proceeded under the jnov standard. Under that standard, the court was required to consider all of the evidence before it in the light most favorable to Robinson's estate. In addition, Robinson's estate had to be given the benefit of all favorable inferences that might reasonably be drawn from the evidence. The motion could be granted only if the facts and inferences so considered so overwhelmingly in favor of a finding of paternity that reasonable men could not have arrived at a contrary conclusion. See, Stubblefield v. Jesco, Inc. 464 So.2d at 254. Cf. Clark v. Whiten, 508 So.2d 1105, 1109 (Miss. 1987).
In truth and in law, the court should have been inquiring whether Eric had established the fact that Robinson was his biological father by clear and convincing evidence. This is a lesser standard than that to which Eric's proof was held. A trier of fact who found that Eric's proof met the stricter jnov standard would necessarily have to have found that Eric's proof passed the lower clear and convincing evidence threshold. This is one of the clearest cases where we may imply a finding not expressly made by the court below. See Mullins v. Ratcliff, 515 So.2d 1183, 1191 (Miss. 1987); Ross v. Brasell, 511 So.2d 492, 495 (Miss. 1987).
In view of the foregoing, we have searched the record before us to identify the evidence supporting the finding of fact that Robinson was Eric's natural father. That evidence which has been recited above, consists, first, of an intimate, sexual relationship between Robinson and Alice during the month of February 1982  nine months prior to Eric's birth on November 24, 1982, and the absence of the remotest suggestion that Alice had sexual relations with any other male during that period of time. Beyond that, the record contains any number of implied acknowledgments by Robinson of the fact of paternity, such as his income tax returns and his food stamp applications. We have little difficulty in concluding that the record contains evidence of sufficient quantity and quality that a rational trier of fact could have concluded that Eric had proved by clear and convincing evidence that Robinson was his natural father. We accordingly affirm the judgment of the chancery court finding Eric Ray Gusta to be the lawful heir of Kenneth Ray Robinson, deceased.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.
PITTMAN and BLASS, JJ., not participating.
NOTES
[1] Gusta also had an older son living with her at the residence. He was not listed on the tax return on food stamp applications as Robinson's son or dependent.
[2] Eric could have brought an action against Robinson's estate seeking both relief under the Uniform Law on Paternity in the form of support and maintenance and as well the right of inheritance under § 91-1-15. This in effect would have combined into a single action one claim in defense of which Robinson's estate of right could have demanded trial by jury and another where no party had any such right. Had Eric asserted in the same action both of these claims, the issue of paternity would have been triable before a jury and that finding would have been binding  insofar as jury verdicts are binding  with respect both to the claim for support and maintenance and for the claim inheritance. See, Metts v. State Dept. of Public Welfare, 430 So.2d 401, 405 (Miss. 1983); Cf Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963).