BRIDGES, J.,
FOR THE COURT:
¶ 1. This is an appeal from the judgment of the Chancery Court of Lafayette County, Mississippi, where Marie Pringle was denied heirship of the property of W.H. Davidson and was denied quantum meruit relief against the estate of Della Marie Davidson and Edward Shannon, Pringle’s cousin and Della’s nephew and executor of her estate. Pringle filed a petition to determine heirs at law and to confirm title on December 16,1998, where she alleged that she was the sole heir of W.H. Davidson. Pringle’s petition to become adjudicated the illegitimate daughter of W.H. Davidson and heir to his property was denied by the chancery court for failure to establish a claim of heirship.
¶ 2. Pringle’s notice of appeal was filed on June 7, 1999, along with a motion for leave to proceed in forma pauperis. The latter motion was denied, but the court found that Pringle’s appeal was properly and timely filed and a certificate of compliance was filed as well. Shannon and the estate of Della Davidson filed a motion to dismiss Pringle’s claim and challenged her appeal. Both of these motions were denied by the trial judge. The following issues are brought forth in this appeal:
1. Whether Pringle’s claim that she is the illegitimate daughter and sole heir of W.H. Davidson’s property is barred under Miss.Code Ann. § 91-1-15 (Rev.1994)?
2. Whether Pringle can recover a portion of W.H. Davidson’s estate on a theory of quantum meruit recovery?
FACTS
¶ 3. Pringle claims that she is and has proven that she is the illegitimate daughter and sole heir to the property owned by W.H. Davidson before his death in September 1975. It is important to note that W.H. Davidson died intestate, subjecting his estate to the Mississippi laws of descent and distribution. In contrast, Shannon and the estate are arguing that upon W.H. Davidson’s death, he left his wife, Della Davidson, as his only living heir. There is a dispute as to whether W.H. and Della were ever married and no marriage license or proof of marriage has been entered into the record other than Shannon’s assertion that he knows that W.H. and Della were married in 1942. Della died testate in December 1996, and her will was probated on June 13, 1997. Her will devised all of her property to Shannon. Pringle contests this will and claims one-half of Della’s estate because she argues that before Della’s death, Della had promised her that she would change her will to reflect that Pringle should receive all of her property, namely the property left to her through W.H. Davidson’s estate. There is no record produced of any such change.
¶4. Pringle filed her petition to determine heirs at law and confirm title in 1998. At no time after W.H. Davidson’s death and prior to this petition did Pringle ever assert her rights as W.H. Davidson’s illegitimate daughter. Shannon argues that Pringle has not proven to a court of law that she is, in fact, the illegitimate daugh *264 ter of W.H. Davidson. Shannon farther argues that, even had she proven such a claim, she is barred under the statute of limitations from now bringing this lawsuit twenty-three years after W.H.’s death and fourteen years after the statute of limitations has passed.
¶ 5. Pringle also brings quantum meruit claims against Shannon and Della’s estate, alleging that she relied on promises made to her by both Shannon and Della that she would receive a substantial amount of money from Della’s estate and should receive such compensation for her services in taking care of Della while she was sick. Specifically, Pringle claims that Della promised her such compensation because Pringle moved into Della’s home and cared for her a few months before Della’s death. Pringle also claims that Shannon promised her compensation for taking care of his aunt and that Shannon told Pringle that he would give her some of the proceeds from Della’s estate, which primarily consisted of the property of W.H. Davidson that was distributed to Della in 1975 and to which Pringle now claims she is entitled.
¶ 6. Pringle additionally asks that this Court award her veterinary bills for her two dogs that were required to live in the care of an animal clinic after Shannon evicted Pringle and the dogs from Della’s home upon Della’s death. Pringle’s dogs have been residing at the clinic since February 1998, and the expense incurred has reached over $16,000, which Pringle claims Shannon owes her because she did not have anywhere else to take the dogs after Shannon evicted her. Pringle prays that this Court will reverse the judgment against her in the lower court and award her what she claims is her rightful portion of Della’s estate. Pringle further claims that since there is no proof that W.H. and Della were ever formally and legally married, Shannon is of no relation to W.H. Davidson and should therefore not be awarded any of W.H. Davidson’s property.
STANDARD OF REVIEW
¶ 7. It is well settled that the Court may not disturb the findings of a chancellor unless the chancellor was “manifestly wrong, clearly erroneous or applied an erroneous legal standard.” Goode v. Village of Woodgreen Homeowners Assoc., 662 So.2d 1064, 1070-71 (Miss.1995); Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990). This Court does not hold the authority to interfere with the judgment of the chancellor where there is substantial evidence to support his findings, even where this Court may have found differently in an initial review of the matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989).
¶ 8. Where the chancellor is the fact-finder in a case before his court, his findings of fact on contradictory evidence “cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence.” Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978); Liddell v. Jones, 482 So.2d 1131, 1132 (Miss.1986). On the other hand, where the chancellor has not made any specific findings of fact, this Court “will proceed on the assumption that [the chancellor] resolved all such fact issues in favor of the appellee.” Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990); PMZ Oil Co. v. Lucroy, 449 So.2d 201, 205 (Miss.1984); Goode, 662 So.2d at 1071.
¶ 9. On the issue of whether there existed a contract between two parties for services in exchange for being named in a will as compensation for those services, the Mississippi Supreme Court provided that it is the burden of the appellant to “clearly *265 establish a contract” for such services. Liddell, 482 So.2d at 1132.
¶ 10. Furthermore, for an illegitimate child to recover ■ as an heir of a decedent’s estate, the standard of proof that burdens the child is that he or she must show that heirship exists by clear and convincing evidence rather than a preponderance of the evidence. Miss.Code Ann. § 91 — 1—15(3)(c) (Rev.1994); Estate of Robinson v. Gusta, 540 So.2d 30, 33 (Miss.1989); Larsen v. Kimble, 447 So.2d 1278, 1283 (Miss.1984); Crosby v. Triplett, 195 So.2d 69, 71 (Miss.1967); Hulitt v. Jones, 220 Miss. 827, 832, 72 So.2d 204, 206 (1954).
LEGAL ANALYSIS
1. Whether Pringle’s claim that she is the illegitimate daughter and sole heir of W.H. Davidson’s property is barred under Miss.Code Ann. § 91-1-15 (Rev. 1994)?
¶ 11. This case holds many unanswered questions which would be helpful to a more thorough analysis of Pringle’s claims, such as, whether Pringle actually is the illegitimate child of W.H. Davidson and whether W.H. and Della Davidson were legally married at the time of W.H.’s death? Nothing in the record is indicative that Pringle has proven her status as W.H.’s illegitimate daughter. There is no evidence or documentation, other than Prin-gle’s word and her hearsay claims that W.H. and Della both acknowledged her as W.H.’s biological daughter at some point, which she claims would tend to verify or clarify her claim.
¶ 12. It is the understanding of this Court, absent evidence of such, that no blood test has ever been officially taken to confirm such a claim. Neither is there any evidence put forth and entered in the record of this case that W.H. and Della Davidson were ever married in accordance with the law. This Court could speculate that because Della changed her name to Davidson and because the lower court found that she was W.H.’s only heir at the time of his death, that the couple was most likely legally married. On the other hand, we could engage in speculation that their relationship was like those of many years ago, such as in 1942, where it was not unusual for men and women to live and be recognized as married couples without ever becoming legally married, and so it would be possible that W.H. and Della were never officially married. This would reflect the concept of common law marriages which were abolished in this state in 1956. Gaston v. Gaston, 358 So.2d 376, 378 (Miss.1978).
¶ 13. At the time that common law marriages were recognized in Mississippi, the couple had to show that they had an agreement with one another that they intended to be husband and wife and that such agreement was followed up with cohabitation, thereby holding themselves out to the public as a married couple. Because there is no indication in the record before this Court, however, that W.H. and Della had a common law marriage or a legal marriage that would conform to the laws in this state today, we cannot engage in such speculation to attempt to answer these questions either in the affirmative or the negative. Rather, we are limited to make a ruling based on what is before us in the record. Furthermore, the chancellor never reached the issue of the marriage of W.H. and Della because Pringle’s case was cut short by the statute of limitations. The standard of review clearly provides that we may assume that the chancellor resolved all factual issues such as this one in favor of the appellee. Newsom, 557 So.2d at 514. Therefore, our conclusions must be drawn based on a precept that W.H. and Della were married, giving Della *266 the right to receive W.H.’s property upon his death in accordance with the laws of descent and distribution. See Miss.Code Ann. § 91-1-1 (Rev.1994); Miss.Code Ann. § 91-1-7 (Rev.1994). As such, the chancellor can be said to have ruled correctly, despite the obstacle faced by Pringle with the statute of limitations.
¶ 14. It is true that illegitimate children do have the right to inherit from their natural fathers. Holloway v. Jones, 492 So.2d 573, 574 (Miss.1986); Larsen, 447 So.2d at 1283; Trimble v. Gordon, 430 U.S. 762, 776, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Nonetheless, the illegitimate child must prove paternity by clear and convincing evidence. Miss.Code Ann. § 91-1-15(3)(c) (Rev.1994); Gusta, 540 So.2d at 33; Larsen, 447 So.2d at 1283; Crosby, 195 So.2d at 71; Hulitt, 220 Miss. at 832, 72 So.2d at 206. Further, the child must make his claim to the estate of his father within one year from the time of his father’s death. Miss.Code Ann. § 91-1-15 (Rev.1994). However, Pringle’s situation would fit into the amended section of the statute which reads:
A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father.... [The claim] shall be brought within three years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.
Id. Clearly, Pringle did not bring her claim in the statutorily prescribed time limit and therefore is barred from now bringing this claim over fourteen years later. In her affidavit, Pringle cites as her only reason for waiting so long to file this claim against the estate of W.H. Davidson, by and through the estate of Della Davidson, that she was too young at the time of W.H.’s death and she claims that she did not know any better than to wait to stake any claim she may have until after Della’s death. However, we note that the statute does not provide for excuses on the youth or immaturity of the illegitimate child: “such time period shall run notwithstanding the minority of the child.” Id. Nowhere in the statute do we find wiggling room for one who claims not to know any better, one who is ignorant of the law or one who takes no measures to find out the law before it is too late. As such, we find that there is nothing we can do here to help Pringle’s situation, and it is our opinion that the chancellor was accurate in his interpretation of the statute, ultimately leading to his ruling that Pringle was not timely in her claim, and it is therefore barred.
¶ 15. As previously noted in the standard of review, Pringle should have taken steps to prove her heirship by showing the court that she was, in fact, the illegitimate daughter of W.H. Davidson by clear and convincing evidence anytime between his death in 1975 and July 1, 1984. Moreover, we note that even now, after Pringle’s filing of this appeal, there is yet to be any definitive evidence cited in the record that Pringle is who she claims to be — the illegitimate daughter of W.H. Davidson-save for her claims that W.H. and Della, who are both deceased and cannot now testify to that claim, acknowledged her as such.
¶ 16. In the Gusta case, the Mississippi Supreme Court gave some examples of how, without an actual blood test or direct testimony of the alleged father by way of an affidavit or will, the court could be convinced that an appellant is the illegitimate child of the decedent whose estate is in question. Gusto, 540 So.2d at 34. *267 This would include such things as proof of an “intimate, sexual relationship” between the decedent and the child’s mother approximately during the nine month period before the appellant’s birth; the “absence of the remotest suggestion that [the appellant’s mother] had sexual relations with any other male during that period of time;” the decedent’s income tax returns or any other documentation that would tend to show a parenVchild relationship between the decedent and the child. Id. With any proof put forth by Pringle of any of these things, or other evidence of the identity of her natural father, before the July 1, 1984 deadline, the chancellor could have possibly awarded Pringle with a child’s portion of W.H. Davidson’s estate. Not only do we note that Pringle offered no such proof before that date, but it appears from the record that she still has not made the effort to do so. Therefore, this Court finds that the chancellor was correct in his conclusions that Pringle’s claim was untimely and devoid of any proof of heirship and should be barred from any further adjudication.
2. Whether Pringle can recover a portion of W.H. Davidson’s estate on a theory of quantum meruit recovery?
¶ 17. While this Court recognizes that this issue was not brought before the lower court and is barred from this appellate review, we find that a discussion of this type of recovery is necessary to aid Pringle in understanding why her theory of quantum meruit relief in this case would not have prevailed in helping her to take a piece of this pie, so to speak.
¶ 18. Pringle asserts that she moved in with Della and took care of her while she was sick and incapacitated because Della promised Pringle that she would be included in her will and would receive all of Della’s estate, consisting of the property that Della inherited from W.H.’s estate in 1975. It has been well established that an oral promise to convey property in a will is an unenforceable contract under the statute of frauds and can therefore not be subject to specific performance, even if the promisee has done everything that was required of him under the agreement. Williams v. Mason, 556 So.2d 1045, 1048-49 (Miss.1990); Trotter v. Trotter, 490 So.2d 827, 880 (Miss.1986); Liddell, 482 So.2d at 1132-33; Kalavros v. Deposit Guaranty Bank & Trust Co., 248 Miss. 107, 116, 158 So.2d 740, 744 (1963); Estate of Collins v. Dunn, 233 Miss. 636, 644-45, 103 So.2d 425, 430 (1958); Wells v. Brooks, 199 Miss. 327, 332, 24 So.2d 533, 534 (1946); Stephens v. Duckworth, 188 Miss. 626, 634, 196 So. 219, 221 (1940); Ellis v. Berry, 145 Miss. 652, 110 So. 211, 213 (1926). However, the courts also made provisions for those who have already rendered services in expectation of compensation, preventing the unjust enrichment of the promisor. Kalavros, 248 Miss. at 118, 158 So.2d at 744-45:
The general rule is that where services are rendered by one person for another, which are knowingly and voluntarily accepted, without more, the law presumes that such services were given and received in the expectation of being paid for, and implies a promise to pay their reasonable worth.
[[Image here]]
A promise to pay for services is implied when they are rendered and received in such circumstances as authorize the party performing to entertain a reasonable expectation of payment for them by the party benefited [sic]. However, the law will not imply a promise to pay the value of services rendered and accepted, where there is proof of a special agreement to pay therefor a particular amount or in a particular manner, or *268 proof of an intent or agreement that the services were to be gratuitous.

Id.

¶ 19. It is our opinion that there is no contract for services rendered between Pringle and Della, either express or implied. There must be evidence “sufficient to establish the claimant’s right to recover in such [a] case” before the party contesting the will would be able to prevail on a quantum meruit basis. Dunn, 233 Miss. at 645, 103 So.2d at 430. Here, Pringle has not produced any evidence to this Court, other than by her own testimony, that Della’s intent was to change her will to reflect that Pringle would receive everything belonging to Della simply because Pringle chose to take care of her of her own volition. Rather, as in Kalavros, it seems more likely to us that Pringle was “prompted by feelings of natural love and affection, and that [Pringle’s] services as caretaker were not rendered in pursuance of any contract whatever or with any expectation of compensation.” Kalavros, 248 Miss. at 118, 158 So.2d at 745. “[T]here is a presumption of gratuity for mutual services growing out of a family relation existing between persons living in the same household.” Id. (emphasis added). Della was, by way of her presumed marriage to W.H. Davidson, Pringle’s stepmother, whom Pringle admittedly cared for like a daughter would.
¶20. In Kalavros, the court provided that it is not the courts’ power and should not be within their power to make a contract where no contract actually exists, in essence, “tak[ing] property from one person, like Robin Hood, and giv[ing] it to another.” Id. at 746. The person named in Della’s will to receive all of her estate was Shannon. Shannon was also named as executor of Della’s estate. Because this Court must assume that W.H. and Della were married, then Shannon would be considered a family member of W.H. Davidson by marriage, even though it is not necessary that a decedent devise his or her property to a family relation, as Pringle would seem to argue before this Court. The court in Williams gives a warning to all appellants who find themselves in Prin-gle’s position, without a contract for such services made in writing:
We are aware that by our construction ... the statute of frauds may be made an instrument of fraud. But this is always true, whenever the law prescribes a form for an obligation. The very meaning of such a requirement is that a man relies at his peril on what purports to be such an obligation without that form.
[[Image here]]
[W]e well realize that we hold enforceable rights predicated upon the conduct of the parties but unattended by any writing. Although neither the statute of frauds nor the statute of wills per se preclude quantum meruit recovery in such circumstances, we are not unaware that the policy considerations supporting the existence and enforcement of those statutes may be present nevertheless. Because the decedent is not available to provide his version of the matter, courts must view with a touch of skepticism claims for services rendered asserted only at death. We have in the past suggested that the party alleging such an agreement must prove its existence by something more than the ordinary preponderance of the evidence.... [W]e said that such an agreement must be proved by clear, definite and certain evidence.
Williams, 556 So.2d at 1048-51 (emphasis added). See also Trotter, 490 So.2d at 830.
¶21. It is opinion of this Court that Pringle does not prove the reality of a contract between her and Della by such *269 clear and definite evidence as would entitle her to all of Della’s estate, namely the property distributed to Della from the estate of W.H. Davidson. Pringle would have this Court believe that if Della had not promised Pringle all of her estate as payment for services, Pringle would not have gone to live with Della and would not have taken care of her. We are not so convinced.
¶ 22. If, in fact, Pringle has been subjected to the cruelties which she has claimed to have endured at the hands of Shannon, we extend our sympathies. However, simply because Pringle may have been treated badly by Shannon, this Court would not be justified in disregarding Shannon as a beneficiary of Della’s will and then writing Pringle into it without any further proof that she was meant to be there. A court of law is not a place that one should look to for emotional support or revenge to ease one’s pain and anger toward another party. Rather, it is a place where the law is to be strictly followed and for one to receive what is rightfully his with sufficient proof shown of such. We simply do not have definitive proof here of heirship or of a contractual relationship between the appellant and Della Davidson in the form of compensation for services that would allow her quantum meruit relief.
¶ 23. As to the claim of quantum meruit recovery against Shannon, we also find that there is no evidence of such a contract between Shannon and Pringle for Pringle’s services in taking care of his aunt. Further, Shannon, as the executor of Della’s estate, was within his right to dispose of Della’s property in accordance with her will. As such, Shannon was not required to allow Pringle to continue residence at Della’s home and the eviction of Pringle from the premises, while it may be an unnecessary display of hostility on Shannon’s part, cannot be said to be out of the bounds of the law. See Miss.Code Ann. § 91-7-47 (Supp.2000):
Every executor or administrator with the will annexed, who has qualified, shall have the right to the possession of all the personal estate of the deceased, unless otherwise directed in the will; and he shall take all proper steps to acquire possession of any part thereof that may be withheld from him, and shall manage the same for the best interest of those concerned, consistently with the will, and according to law.... He shall also have a right to the possession of the real estate so far as may be necessary to execute the will, and may have proper remedy therefor.
See also Miss.Code Ann. § 91-7-49 (Rev. 1994). Because there has been no proof offered by Pringle that Shannon acted outside the scope of his role as executor and as devisee in taking possession of all of Della’s property, we cannot find that Shannon is responsible to Pringle for her debt to the animal clinic where her dogs have been housed since her eviction from Della’s residence.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY BARRING THE APPELLANT’S UNTIMELY CLAIM TO ESTABLISH HEIRSHIP IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., THOMAS, LEE, and MYERS, JJ., concur.
PAYNE, J., dissents with separate written opinion joined by KING, P.J. SOUTHWICK, P.J., concurs in result only.
IRVING and CHANDLER, JJ., not participating.