BARNES, J.,
for the Court:
¶ 1. This appeal involves the determination of the heirs at law of Floyd McIntosh. Floyd died intestate, survived by his widow, Cora Badgett McIntosh. Della Mae McIntosh is Floyd’s daughter, who was born out of wedlock before Floyd married Cora and who predeceased Floyd. Regarding the parties to this appeal, Olivia Prout is one of Della’s five children, and Thelma Williams is Cora’s niece and one of the heirs named in Cora’s will.
¶ 2. Williams filed a petition to adjudicate heirship in the Chancery Court of Simpson County after Della’s children filed a lawsuit claiming that they, as Della’s surviving heirs, should receive an interest in Floyd’s estate. The chancery court determined that Floyd never adopted Della and that during her lifetime, Della did not establish paternity; therefore, Floyd’s sole heir was Cora. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. In 1926, Della was born out of wedlock to Floyd McIntosh and Cletho Mahef-fay in Simpson County, Mississippi. The couple never married, and Della was their only child. On April 9, 1975, Della died intestate. She was survived by her father, Floyd, and her five children from two marriages: Olivia Prout, Linda Prout, Carolyn Prout, Edward Marvin, and Dwight Marvin. On August 1, 1979, Floyd died intestate. He was survived by his widow, Cora. No children were born of their marriage, and Cora bore no children during her lifetime.
¶4. Regarding Della’s right to inherit from Floyd, in 1981, the Mississippi Legislature amended the Mississippi Code of 1972 and adopted section 91 — 1—15, thereby providing a means by which an illegitimate child could inherit through his or her natural father by the laws of descent and distribution, provided that: (1) the natural parents married before the child’s birth; (2) there had been an adjudication of paternity or legitimacy before the death of *197 the intestate; or (3) there had been an adjudication of paternity after the death of the intestate. Miss.Code Ann. § 91 — 1— 15(3)(a)-(c) (Supp.1983 and 2010). For the latter action, an adjudication of paternity must be made within one year of the death of the intestate or within ninety days after the first publication of notice to creditors, whichever is less. Miss.Code Ann. § 91-l-15(3)(c) (Supp.1983 and 2010). Section 91-1-15(3) also created a three-year “catch-up period” from July 1, 1981, to July 1, 1984, when illegitimates could maintain actions to establish rights in estates where the decedent had died prior to July 1, 1981. Robert Weems, Mississippi Practice Series: Wills and Administration of Estates in Mississippi § 1:10 (3d ed.2003). Section 91-1-15’s provisions thus apply to Olivia’s claim since Floyd died in August 1979. However, there was no adjudication of Floyd’s heirs before his death or within the time prescribed by statute following his death. On July 1, 1984, the statutory three-year catch-up period of section 91-1-15(3) expired for any possible illegitimates of Floyd to maintain an action to establish rights to his estate.
¶ 5. On May 16, 1983, Cora deeded one acre of property in Simpson County to Loyal Smith by warranty deed, which was duly recorded in the land records of Simpson County. In November 1994, Cora died testate. Williams was one of the beneficiaries of Cora’s will. Olivia now claims that Cora’s conveyance in 1983 constituted fraudulent concealment because Cora did not have full ownership of the property: Floyd’s interest in the property was conveyed without notice or compensation to the heirs of Floyd, and Cora did not determine Floyd’s heirs at law. Additionally, Olivia claims Cora improperly conveyed the remaining interest in the property through her will to Williams and Williams’s two children. Olivia concludes that Cora acted as an administratrix[1] de son tort and tolled any statute of limitations.
¶ 6. On September 15, 2008, Williams filed a petition for adjudication of heirship. Named as defendants were the known and unknown heirs of Floyd and Della and also Della’s five children (Olivia, Linda, Carolyn, Edward, and Dwight). The petition was filed in response to a lawsuit filed in chancery court by Della’s five children, which claimed that since Della died intestate, they are her surviving heirs; therefore, they should receive Della’s share of Floyd’s estate. In Williams’s petition, however, she claimed that the time for which illegitimates might assert their status as heirs at law had passed according to the statute of limitations provided in section 91 — 1—15(3)(c). In March 2009, the chancellor held a hearing to determine Floyd’s heirs at law. Olivia, Williams, and Helen McIntosh O’Neil (Floyd’s niece) testified.
¶ 7. On June 17, 2009, the chancellor issued a final judgment, finding that Floyd never adopted Della, and Della never established paternity during her lifetime; therefore, Floyd’s sole heir-at-law was Floyd’s widow, Cora. Olivia timely filed a notice of appeal.
STANDARD OF REVIEW
¶ 8. A limited standard of review is applied to appeals from chancery court. Miller v. Pannell, 815 So.2d 1117, 1119 (¶ 9) (Miss.2002). It is well established that an appellate court “will not disturb the factual findings of a chancellor unless *198 such findings are manifestly wrong or clearly erroneous.” Estate of Dykes v. Estate of Williams, 864 So.2d 926, 930 (¶ 9) (Miss.2003). “If there is substantial evidence to support the chancellor’s findings of fact, those findings must be affirmed.” Id. Questions of law are reviewed de novo. Id. For an illegitimate to recover as an heir of a decedent’s estate, he or she must prove that heirship exists by clear and convincing evidence. In re Estates of Davidson, 794 So.2d 261, 265 (¶ 10) (Miss.Ct.App.2001) (citing Miss.Code Ann. § 91 — 1—15(3)(c) (Rev.1994)).
ANALYSIS OF THE ISSUES
¶ 9. Olivia raises two issues. First, Olivia claims the chancery court erred in ruling that Della was not legitimized during Della’s lifetime to be Floyd’s daughter and that the sole hem of Floyd is Cora. Second, Olivia argues that Cora acted as an admin-istratrix de son tort when she executed and delivered the 1983 warranty deed, thereby tolling any statute of limitations for the legitimization of Floyd’s heirs at law. We shall discuss each issue in turn.
1. Whether Cora was the Sole Heir-at-Law of Floyd.
¶ 10. Olivia claims that the chancery court erred in ruling that Della did not previously establish Floyd’s paternity during Della’s lifetime; thus, Floyd’s sole heir at law was his widow, Cora. Olivia maintains that Della’s paternity was established prior to Della’s and Floyd’s deaths by the issuance of a document for Della in July 1965 entitled “Delayed Certificate of Birth” which Floyd had signed on November 14, 1964. Additionally, Olivia claims that Floyd acknowledged Della as his daughter throughout his lifetime by his “spoken words and actions.” Olivia further contends that the current heirship proceeding provided clear and convincing evidence that Della was Floyd’s daughter even if the chancery court was correct in determining that Della did not establish paternity prior to Della’s or Floyd’s death.
¶ 11. It is undisputed that section 91 — 1— 15(3) is the controlling statute. It reads in pertinent part:
An illegitimate shall inherit from and through the illegitimate’s natural father and his kindred ... according to the statutes of descent and distribution if:
(a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or
(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less.... This one-year limitation shall be self-executing and may not be tolled for any reason, including lack of notice. If an administrator is appointed for the estate of the intestate and notice to creditors is given, then the limitation period shall be reduced to ninety (90) days after the first publication of notice, if less than one (1) year from the date of the intestate’s death; provided actual, written notice is given to all potential illegitimate heirs who could be located with reasonable diligence.
[[Image here]]
*199 A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and ... shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.
Miss.Code Ann. § 91-1-15(3) (Supp.2010).
¶ 12. Olivia claims that because Floyd acknowledged Della as his daughter by executing her delayed birth certifícate in 1964, when Della was thirty-nine years of age, Floyd met his burden of “adjudicating” Della’s paternity before his death under section 91 — 1—15(3)(b). We disagree. The delayed birth certificate is insufficient to meet the requirements for adjudication of paternity before the death of the intestate; thus, it does not toll the time period for Della to adjudicate heirship under section 91-1-15(3). “Adjudicate” means “[t]o settle in the exercise of judicial authority.” Black’s Law Dictionary 42 (6th ed.1990). The only judicial proceeding regarding Floyd’s heirship were filed by Williams in 2008, well after Floyd had died. The delayed birth certificate has no legal effect on how illegitimates become heirs at law; Title 91 of the Mississippi Code does not mention usage of birth certificates to “adjudicate” paternity. Furthermore, the delayed birth certificate does not meet the requirements of a “voluntary acknowledgment” of paternity by Floyd either. Mississippi Code Annotated section 93-9-28 (Rev.2004) is the only statute that provides a procedure whereby the natural father of an illegitimate child may voluntarily acknowledge the child as his own. In re Estate of Farmer ex rel. Farmer, 964 So.2d 498, 500 (¶ 4) (Miss.2007). The statute states that within twenty-four hours of the birth of an illegitimate child, healthcare providers are to provide a form generated by the Mississippi State Department of Health which states “the execution of the acknowledgment of paternity shall result in the same legal effect as if the father and mother had been married at the time of the birth of the child.” The father and mother complete and execute the form before a notary public, and the form is forwarded to the Department of Health. This “voluntary acknowledgment shall constitute a full determination of the legal parentage of the child.” Miss.Code Ann. § 93-9-28 (Rev.2004). However, this statute was enacted in 1994, and it is not applicable here. Therefore, Floyd’s execution of the delayed birth certificate in 1964 does not meet the requirements for adjudication of paternity under section 91 — 1— 15(3).
¶ 13. Olivia claims that because testimony at the hearing showed Floyd acknowledged Della as his daughter by “spoken words and actions,” there is clear and convincing evidence that Della is the natural-born daughter of Floyd. Olivia testified that Floyd was her grandfather; and Floyd acknowledged Della to be his daughter and she, Linda, Carolyn, Edward, and Dwight to be his grandchildren. Further, she testified that Floyd maintained a relationship with them throughout his lifetime. Olivia maintained that: she knew Williams from a young age; Williams slept with Olivia and her other siblings at Floyd’s home; and Williams knew Olivia and her siblings were Della’s children and that Della was Floyd’s child. Olivia stated Williams and Della went to school together. O’Neal, Floyd’s niece, corroborated much of this testimony and added that Cora knew Della was Floyd’s daughter. Further, Floyd treated Della and her children as his daughter and grandchildren, as did everyone else in the family. However, *200 while this evidence may indicate that Floyd acknowledged Della, as his daughter, as stated earlier, this “acknowledgment” of possible paternity is insufficient under section 91-1-15(3) because the paternity was never adjudicated by a court of law, let alone within the appropriate time limits. Olivia cannot now argue that she has met her burden of proof by providing clear and convincing evidence that Floyd was Della’s daughter approximately twenty-five years after the three-year catch-up period had expired.
¶ 14. Neither Olivia nor her siblings brought a claim to prove heirship within the three-year catch-up period of July 1, 1981, to July 1, 1984, as specified by section 91-1-15(3). In fact, Olivia never petitioned to determine heirship at all; instead, Williams brought the petition, approximately twenty-four years after the statute of limitations had run, in response to litigation initiated by Olivia and Olivia’s siblings. Olivia explained that she did not ever file a petition to determine heirship because she was ignorant of “Mississippi adjudication or what have you,” but the statute does not allow the time limit to be tolled for ignorance of the law.
¶ 15. Olivia did not show that the three instances were met under section 91-1-15(3) whereby an illegitimate and her kindred may inherit under the laws of descent and distribution. It is undisputed that Floyd and Cletho never married. Further, there was no “adjudication of paternity or legitimacy” either before Floyd’s death as Olivia argues in this issue or after the death of Floyd within the statutory time limits. Thus, any claim of heirship by Della or her heirs is time-barred. It was not until September 15, 2008, that Williams, not Olivia, filed a petition to adjudicate heirship, approximately twenty-nine years after Floyd’s death. Because Olivia and her siblings did not follow the plain language of section 91-1-15, Olivia has no claim to Floyd’s estate. The chancery court properly found that Olivia failed to prove her possible heirship by clear and convincing evidence. Accordingly, the chancery court did not err in finding that Della’s possible claim of inheritance was barred, and Floyd’s sole was his widow, Cora.
2. Whether the statute of limitations provided in section 91-l-15(c) was tolled.
¶ 16. Olivia next argues that the statute of limitations under section 91 — 1— 15(3) was tolled by Cora’s execution of the 1983 warranty deed. She contends that Cora acted as an administratrix de son tort when she conveyed real property to Smith in 1983 without determining who Floyd’s heirs were; she claims that this should have been done either immediately after Floyd died in 1979 or when Cora conveyed the real property. Olivia maintains that Cora fraudulently concealed this conveyance and the heirship interest in Floyd’s estate, thereby wrongfully taking all of the proceeds from the sale of the property to the disadvantage of Floyd’s heirs. Thus, Olivia reasons that the statute of limitations for determining paternity or legitimacy under section 91-1-15(3) was tolled until Williams filed her petition to determine heirship in September 2008.
¶ 17. The doctrine of executor-ship de son tort has long been recognized in Mississippi. See Hardy v. Thomas, 23 Miss. 544 (1852). An executrix de son tort is generally “[a] person who presumes to act on behalf of an estate but without authority.” Mann v. Buford, 853 So.2d 1217, 1220 (¶ 13) (Miss.2003). The literal meaning of the term is that the person is an executor “of his own wrong.” Black’s Law Dictionary 448 (6th ed.1990). A person is considered an executor de son tort if *201 he takes part in “any intermeddling with the estate of a decedent under a claim of authority” or “any act characteristic of the office of a rightful executor or which evinces legal control” such as “taking possession of the assets without administration and controlling the property as if the taker were the legal representative.” In re Estate of Johnson, 705 So.2d 819, 822 (¶ 28) (Miss.1996). Likewise, “[a]n admin-istratrix de son tort is held to the same standard of trust and fiduciary responsibilities as a duly-appointed administratrix or executrix.” Id.
 ¶ 18. At the outset, we note that Olivia did not raise this argument before the chancery court; therefore, she is barred from raising it as an issue on appeal. See Albert v. Allied Glove Corp., 944 So.2d 1, 7 (¶ 21) (Miss.2006). Notwithstanding the procedural bar, her argument is also without merit. First, Cora or any interested party had no reason to investigate the possible illegitimate heirs of Floyd at the time of his death in 1979 because, at that time, the laws of Mississippi did not allow illegitimates to inherit from their father or his kindred by the laws of descent and distribution. It was not until the Mississippi Code was amended in 1981 that an illegitimate could inherit from his father and father’s kindred, under certain circumstances. Weems, at § 1:10.
¶ 19. Second, there is no reason that the statute of limitations in section 91-1-15 was tolled. None of Cora’s actions in the record indicate she was acting as an ad-ministratrix de son tort regarding Floyd’s estate. The only evidence Olivia offers of improper meddling or bad faith on the part of Cora is Cora’s conveyance of property to Smith in 1983 without first ascertaining Floyd’s possible heirs. Yet, we note Cora was not acting as an administra-trix of Floyd’s estate when she conveyed this property; instead, she acted as Floyd’s sole heir-at-law, since neither Olivia nor her siblings had made any effort to adjudicate Della’s paternity.
¶ 20. Olivia, however, argues that it was Cora’s duty to ascertain Floyd’s possible heirs when Cora conveyed the property in 1983, regardless of whether Cora was ad-ministratrix of Floyd’s estate or not. Because Cora did not, Olivia argues that any time limits should be tolled. Olivia relies on Estate of Thomas v. Thomas, 883 So.2d 1173, 1177 (¶ 12) (Miss.2004) for the proposition that “the administratrix of an estate is under a duty to use reasonable diligence to ascertain potential heirs,” and her duty is also to provide notice to known illegitimate children who are potential heirs whose claims could be barred by the statute of limitations. (Citing Smith ex rel. Young v. Estate of King, 579 So.2d 1250, 1252 (Miss.1991)). In Thomas, the ninety-day period of section 91-l-15(3)(c) to file an adjudication of paternity following the first publication of notice of creditors for claims to the decedent’s estate was tolled because the illegitimate children lacked notice from the administratrix of their possible claims to Ezell Thomas’s estate, when the administratrix knew of the illegiti-mates’ existence. Id. at 1179 (¶¶ 22-23). Olivia also cites to Leflore ex rel. Primer v. Coleman, 521 So.2d 863, 868 (Miss.1988) for the proposition that the law will not permit a deliberate concealment of potential heirs at law by the administratrix. Olivia concludes that Cora should be held to the same standard as if she were the duly appointed administratrix of Floyd’s estate. We disagree.
¶ 21. Olivia is correct that the mandatory compliance by an illegitimate with the provisions of section 91-1-15(3) “presupposes good faith compliance by administrator with the obligation imposed upon him [or her] by law to advise the court and secure process upon all heirs known to him *202 [or her],” and “neither will the law permit a deliberate concealment by an administrator of a potential lawful heir.” Leflore, 521 So.2d at 868. But Thomas and Leflore are distinguishable from the present case. First, both of these cases deal with the tolling of section 91 — 1—15(3)(c)’s ninety-day statute of limitations once notice to the intestate’s creditors is published, which is inapplicable here, and not the three-year catch-up period from 1981 to 1984, which is at issue here.
¶ 22. Second, as stated earlier, Cora was not acting as the administratrix of Floyd’s estate when she conveyed the property to Smith four years after Floyd had died intestate, and Cora had no legal duty to give notice to Della’s hems of the conveyance. See Leflore, 521 So.2d at 868. On the other hand, the administratrix in Thomas had the duty to give notice to Thomas’s illegitimate children because proof was presented that the administra-trix knew of the existence of the illegiti-mates, but did not give them notice until after the applicable ninety-day and one-year time limits had run. Thomas, 883 So.2d at 1177 (¶ 13).
¶ 23. In this case, we cannot say that Cora, who was not the administratrix of Floyd’s estate, should have notified Della’s children of their possible heirship when she executed the warranty deed in 1983. We also note that neither Thomas nor Leflore dealt with an administratrix de son tort, which is Olivia’s primary argument justifying the tolling of the statute of limitations in this case.
¶ 24. The Mississippi Supreme Court has not hesitated to affirm claims that chancery courts have found time-barred because they were not brought within the three-year catch-up period provided in section 91-1-15(3). Williams directs our attention to a case where the supreme court recently held that an attempt to adjudicate paternity by half siblings was time-barred under the statute of limitations of section 91-1-15(3): Estate of McCullough v. Yates, 32 So.3d 403, 416 (¶ 42) (Miss.2010). While there was no allegation of an administration de son tort by the alleged heirs, we find the case analogous to the present case. The decedent died in 1978, and an estate was never opened. Id. at 407 (¶ 9). The alleged illegitimates argued that the time period for adjudicating heirship began with the date of the death of the decedent’s half sibling in 2003, not the date of the decedent’s death in 1978. Id. at (¶ 12). Because the decedent died in 1978, before the amendment of section 91-1-15, the supreme court stated that the illegiti-mates had three years, from July 1, 1981, until July 1, 1984, to adjudicate paternity under section 91-1-15(3), but it was not done until twenty-five years after the decedent’s death. Id. at 411 (¶ 25). Accordingly, the illegitimates’ claims were time-barred. Id.
¶ 25. Similarly, in Davidson, this Court affirmed the chancery court’s denial of the alleged illegitimate heir’s petition to determine adjudication and become the heir of the decedent’s property because of the time bar under section 91-1-15. In re Estates of Davidson, 794 So.2d at 266 (¶ 14). There, the intestate decedent died in 1975, but the alleged illegitimate daughter did not file her petition to determine heirship until 1998, after the death of the intestate’s wife. Id. at 263 (¶¶ 3, 4). Prior to that, she had never asserted a claim to be the daughter of the intestate. Id. at (¶ 4). This Court held that the claim should have been brought during the three-year period from 1981 until 1984, and since it was not, the claim was time-barred. Id. at 266 (¶ 14).
¶ 26. Olivia, however, contends that In re Estate of Johnson, 705 So.2d 819 (Miss. *203 1996) is controlling in the present case. In Johnson, the supreme court held the decedent’s half-sister and another individual were acting as administratrices de son tort, and their actions operated as a waiver of the statutory three-year time period provided in section 91-1-15 against the illegitimate heir. Johnson, 705 So.2d at 823 (¶ 36). Robert Johnson, the famed blues musician, died in 1938. Id at 820 (¶ 8). He had an illegitimate child, Claud Johnson, who was born in 1931, and whose birth certificate listed Johnson as his father. Id at (¶ 7). Carrie Thompson was Johnson’s half-sister and held herself as the only known living heir of Robert Johnson from 1974 until her death in 1983. Id at 820, 821 (¶¶ 3, 23). Thompson entered into an agreement in 1974, assigning all of her purported rights to the copyrights of Johnson’s work to an individual in return for fifty percent of the royalties collected. Id at 820 (¶ 9). Thompson died testate in 1983, appointing Annye Anderson, Thompson’s half-sister, who was unrelated to Johnson, as her personal representative, and devising all of her rights and claims to Anderson and Thompson’s grandson. Id at 820 (¶ 13). In 1989, Johnson’s estate was probated, and Anderson was appointed the administratrix of Johnson’s estate. Id at 820-22 (¶¶ 4, 14). Claud timely responded to a petition to determine heirs, claiming he was the sole hem to Johnson’s estate. Id at 821-22 (¶¶ 17,19).
¶ 27. The chancery court dismissed Claud’s claim, but the supreme court reversed, holding that his claim was not time-barred by section 91 — 1—15(3)’s three-year catch-up period, because both Thompson and Anderson assumed the status of executrices de son tort of Johnson’s unpro-bated estate. Id at 823 (¶¶ 31-32). Thompson acquired this status related to Johnson’s unprobated estate when she entered into the agreement in 1974 purporting to be Johnson’s sister and only surviving heir. Id at 823 (¶ 32). Thompson assigned her alleged rights to Johnson’s intellectual property to an individual in return for royalties paid to her and efforts to capitalize on Johnson’s legacy. Id at 820 (¶ 9). Also, Anderson garnered this status by obtaining an irrevocable power of attorney from Thompson and accepting appointment as the personal representative of Thompson’s estate. Id at 823 (¶ 32). She also admitted that in 1981, she was dealing with Johnson’s estate with her sister, Thompson. Id The record showed Anderson was aware of the duties of an administratrix from 1981 to 1984 and had been told by counsel that she should select an attorney in Mississippi to open Johnson’s estate for probate purposes, but she did not. Id at (¶ 33). The supreme court determined both Thompson and Anderson presented themselves as representatives of Johnson’s estate “during the critical window from 1981 to 1984” and “took actions ... which likely chilled any interest ... others would have had in ... locating the rightful heirs.” Id at (¶ 34). Because Anderson and Thompson aggressively in-termeddled in Johnson’s estate, and they took a position which was beneficial to themselves and detrimental to Claud, the supreme court concluded that their actions as administratrices de son tort operated as a waiver of the statutory bar against Claud, based on reasons of equity. Id at (¶ 36). Claud could pursue his claim as the illegitimate son of Johnson to the same extent as if he had filed his claim between July 1,1981, and July 1,1984. Id
¶28. We find Johnson distinguishable from the instant case. In Johnson, the property at issue was personal property, not real property, as in this case. There are certain acts which do not make one *204 liable as an executor[2] de son tort, such as “taking possession of property of the decedent under color of title and in the good faith belief that a right to possession exists.” 31 Am.Jur.2d Executors and Administrators § 38 (2d ed.2002). Furthermore, “[n]o amount of intermeddling with the real estate of a decedent will make one an executor de son tort....” Id. at § 39; see also 34 C.J.S. Executors and Administrators § 1222 (2009) (“Intermeddling with real estate does not constitute a person executor de son tort.”). This limitation of the doctrine is logical as “[r]eal property descends directly to, and title vests in, the heirs at law to enjoy until the contingency arises when it may be needed to pay debts. Administration then covers only the decedent’s personalty and the realty is in no way involved unless and until the personalty becomes insufficient to pay the debts and expenses.” Weems, at § 2:13. Olivia’s argument that Cora acted as an administratrix de son tort involves the conveyance of the real property Cora possessed by operation of law and not as a representative of Floyd’s estate. Olivia makes no claim of intermeddling with any personal property of Floyd’s estate, only real property. Therefore, the doctrine of administratrix de son tort is inapplicable here.
¶ 29. Further analogizing to Johnson, Olivia insists that Cora acted as adminis-tratrix de son tort because Cora, through the 1983 conveyance, improperly took property to the benefit of herself and to the detriment of the potential heirs. Olivia explains that the deed implied Cora owned and conveyed 100% of the real property, when in fact she only owned and conveyed one-half of the interest in the property, and she claims this action is fraudulent concealment. Olivia contends that because the deed to Floyd and Cora is silent about creating a joint tenancy with right of survivorship, it must be construed as an estate in common; thus, Floyd has an undivided one-half interest in the property, which, upon his death, vested in his heirs at law. Cora, on the other hand, maintained her one-half undivided interest plus whatever fraction she received as Floyd’s heir-at-law. Olivia claims that Cora knew, at the time of the conveyance, that she did not own all of the property but “intentionally cut-out” Floyd’s heirs at law.
¶ 30. We find this argument without merit. Regarding the conveyance, there is no evidence in the record of fraudulent concealment on the part of Cora. The deed was duly recorded in the land records of Simpson County. And even if Cora’s conveyance had been fraudulent, in Mann, the supreme court held that “[alleged wrongful conveyances of estate property do not toll the statute of limitations for filing a claim of heirship.” Mann, 853 So.2d at 1220 (¶ 16). In Mann, the alleged heir was aware that the decedent had died in 1981 and that he might have a possible claim to the estate as an illegitimate child, but he waited until the death of the decedent’s widow, which occurred eighteen years later, before filing a petition to determine heirship. Id. The supreme court held the illegitimate son’s heirship claim was barred by the time constraints provided in section 91-1-15. Id.
¶ 31. Similar to the alleged executrices de son tort in Mann, there were no acts by Cora in the record that show she purposefully prevented Olivia and her siblings from determining they might have a claim to Floyd’s estate. Olivia testified that she was aware of Floyd’s death, and she “wondered” about the land in Mississippi upon Cora’s death in 1994. Further, she said *205 she knew of the conveyance of the property by Cora beginning in 1995. Because of the three-year catch-up period stated in section 91-1-15, Olivia and her siblings had from July 1, 1981, until July 1,1984, to file an adjudication of heirship proceeding, but they did not do so. Cora’s conveyance of property in no way prevented Floyd’s heirs from filing such a petition.
¶ 82. The dissent claims that it was Cora’s responsibility as Floyd’s heir to bring a suit to establish heirship prior to her conveyance of the property in 1983. Such is not the law in Mississippi. The Mississippi Supreme Court has stated:
“[Tjhere appears to be no valid reason to require an heir to institute ... costly and time consuming procedures to determine heirship absent a question concerning his status as an heir. An heir is not required to institute proceedings to establish his heirship at any specific time after the death of the decedent. Rather, such proceedings need only be brought when a question arises concerning the status of a person as a lawful heir of the estate. Once such a question arises, then a suit to establish heirship must be brought to establish that person’s claim.”
In re McLeod v. Price, 506 So.2d 289, 292 (Miss.1987) (emphasis added).[3]
¶ 38. When Floyd died intestate in 1979, his share of the property vested in Cora, regardless of how the property was held by the couple. Cora’s status as Floyd’s heir has never been in question. After the law changed in 1981, there was a three-year catch-up period in which Della’s descendants could have sought to establish their right to a share of Floyd’s estate. Della’s descendants had not filed any such action by 1983 when Cora conveyed the property, and there was no dispute as to Floyd’s heirs at that time. As was noted by the chancellor, from the time of Floyd’s death, Cora, at a minimum, owned a one-half undivided interest in the property as Floyd’s widow, even if Della were proven to be Floyd’s illegitimate child.[4] If Cora only owned one-half interest in the property and not the whole property, she would be liable to Smith under her warranty of title. However, her conveyance of at least one-half interest was done as an owner of the property under intestate succession and not as an administrator of Floyd’s estate. Once legal proceedings were initiated regarding Floyd’s heirship, the pertinent statute of limitations had expired, and the claim of Della’s descendants was barred. We find no legal authority to support the dissent’s position that Cora had to initiate a suit to determine heirship prior to transferring property to Smith. It was the responsibility of Della’s descendants to seek to establish their heirship if they chose to do so. They did not. Nothing about Cora’s conveyance of the property gave her any fiduciary duty to Della’s children. She was not the administratrix of the estate. Further, the conveyance was not hidden. It was duly recorded in the land records of Simpson County. Therefore, the statute of limitations was not tolled for Cora’s failure to initiate these legal proceedings.
¶ 34. According to the record, Cora did not engage in any conduct that might render her an administratrix de son tort. Instead, proper and timely steps were not taken by Della’s heirs to preserve their *206 possible claims to Floyd’s estate. This issue is without merit.
¶ 35. THE JUDGMENT OF THE CHANCERY COURT OF SIMPSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ, IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. CARLTON, J, DISSENTS WITH SEPARATE WRITTEN OPINION.

. For simplicity's sake, we shall use “adminis-tratrix,” the feminine form of "administrator” throughout this opinion, since Cora is female.

. We use “executor” and "administrator” interchangeably here.

. McLeod made clear that if the claimant is an illegitimate, the question as to that person's status arises at the decedent's death. Id. at 292.

. According to Mississippi Code Annotated section 91-1-3 (Rev.2004), if the descendent dies intestate, the widow receives a child’s share of the estate.