# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-IA-01699-SCT

*JAMES ARTHUR MANN*

*v.*

*JACKIE BUFORD AND JILL MANN*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/5/2001 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL DALE COOKE |
| ATTORNEY FOR APPELLEES: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 09/11/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.

## WALLER, JUSTICE, FOR THE COURT:

¶1.     After his complaint for partition and claim of heirship were dismissed, James Arthur Mann filed this interlocutory appeal which we allowed. *See* M.R.A.P. 5. James, the alleged illegitimate son and heir of William Henry Mann, had filed the complaint seeking a portion of the property left by William to his two adopted daughters, Jackie Buford and Jill Mann. Because James did not raise his claim of heirship until eighteen years after William's death, we affirm the chancellor's dismissal of the petition for partition and of James' claim of heirship.

## **FACTS**

¶2.     James Arthur Mann was born to Cora Robinson on May 29, 1939, in Tishomingo County. The birth certificate names William Henry Mann as James' father, but William's signature is not on the certificate. At the time of James' birth, William was married to Gertrude Mann. William and Gertrude adopted two daughters, Jackie Buford and Jill Mann, during their marriage.

¶3.     William died intestate on September 30, 1981. On January 31, 2000, over 18 years later, James filed a petition to open William's estate and was appointed administrator. Shortly thereafter, James filed a complaint against Jackie, demanding an accounting of all property transactions, rents received, animals and vehicles sold, and cash in banks at the time of death.

¶4.     Jackie and Jill filed a motion for removal of administrator and to dismiss the complaint for accounting. After a hearing, the chancellor removed James as administrator and appointed Hayden Ables, the Chancery Clerk of Tishomingo County, as successor administrator. The chancellor closed the estate, discharged the administrator, waived a final accounting, and allowed Jackie and Jill to retain the right to challenge James' heirship.

¶5.     James then filed a motion to reopen William's estate and petitioned to re-divide any assets of this estate. He also filed a complaint for partition against Jackie and Jill. The chancellor consolidated the two cases.

¶6.     The chancellor dismissed James' claim of heirship as precluded under Miss. Code Ann. § 91-1-15 (Rev. 1994). He further found that James did not have the right to proceed in the partition action until he was found to be William's heir under § 91-1-15.

**STANDARD OF REVIEW**

¶7.     In matters that raise questions of law, we employ a de novo standard of review and only reverse for an erroneous interpretation or application of the law. ***Morgan v. West***, 812 So. 2d 987, 990 (Miss.

2

2002); ***Bank of Miss. v. Hollingsworth***, 609 So. 2d 422, 424 (Miss. 1992); ***Harrison County v. City of Gulfport***, 557 So. 2d 780, 784 (Miss. 1990). We will not disturb the factual findings of a chancellor unless it can be determined with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. ***Morgan v. West***, 812 So. 2d at 990; ***Cummings v. Benderman***, 681 So. 2d 97, 100 (Miss. 1996).

## DISCUSSION

**I.   WHETHER THE PROVISIONS OF MISS. CODE ANN. § 91-1-15(3)(c) (REV. 1994) ARE APPLICABLE TO AN ILLEGITIMATE'S PETITION TO ESTABLISH HEIRSHIP.**

**II.   WHETHER THE STATUTE OF LIMITATION IN SECTION 91-1-15(3) IS APPLICABLE TO JAMES' CLAIM OF HEIRSHIP.**

¶8.    James contends that Miss. Code Ann. § 91-1-15(3)(c) (Rev. 1994)[1] applies only to a father inheriting from his illegitimate, and not to his situation, an illegitimate inheriting from the father.[2]  Section 91-1-15(3)(c) contains a time limitation on filing a complaint for adjudication of heirship.  Such a suit must be filed within one year after the death of the intestate or within 90 days after the first published notice to creditors.  James did not ask for an adjudication of heirship until over 18 years after William died.

¶9.    To get around § 91-1-15's time limitation, James argues that § 91-1-15(3) is a "two-part code section.  The portion of the sentence before the comma applies to an illegitimate inheriting from the natural father and the kindred of the natural father.  The portion after the comma refers to the natural father inheriting from the illegitimate and the kindred of the illegitimate."  Therefore, under James' interpretation, the time period during which a father may seek an adjudication of paternity would not apply to an illegitimate seeking an adjudication of paternity.

---

[1]Miss. Code Ann. § 91-1-15(3)(c) (Rev. 1994) provides in pertinent part as follows:

(3)    An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:

* * *

(c)    There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29.  However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child. . . .

[2]Miss. Code Ann. § 91-1-15(3)(a) and (3)(b) do not apply to James' situation inasmuch as William and James' mother were never married and no adjudication of paternity or legitimacy took place before William died.

¶10. The clear language of § 91-1-15(3), however, establishes that it is applicable to both the natural father inheriting from an illegitimate, as well as to an illegitimate child inheriting from or through the father. The use of the conjunction "and," indicates that the statute would be applicable in either situation. *See also* ***Leflore ex rel. Primer v. Coleman***, 521 So. 2d 863, 868 (Miss. 1988) (An illegitimate seeking to inherit through a natural parent under Miss. Code Ann. § 91-1-15 must comply within the limitations contained within the statute.).

¶11. James states that he delayed filing a claim of heirship until after William's widow died, presumably out of respect for her. This reason does not excuse James' failing to take timely action to establish paternity. ***In re Estate of Davidson***, 794 So. 2d 261, 265 (Miss. 2001).

¶12. Because William died on September 30, 1981, and James did not file any claim of heirship until January 31, 2000, his claim for heirship is barred by § 91-1-15.

### III. WHETHER JACKIE AND JILL'S ACTED AS EXECUTRICES DE SON TORT, THEREBY TOLLING THE STATUTE OF LIMITATIONS.

¶13. A person who presumes to act on behalf of an estate but without authority is known as an executor de son tort. The literal meaning of this term is that the person is "an executor of his own wrong." *See* Black's Law Dictionary 448 (6th ed. 1990). A person is deemed to be an executor de son tort if he or she engages in "any intermeddling with the estate of a decedent under a claim of authority" or "any act characteristic of the office of a right executor or which evinces legal control," such as "taking possession of the assets without administration and controlling the property as if the taker were the legal representative." ***Johnson v. Harris***, 705 So. 2d 819, 822 (Miss. 1996); ***Hardy v. Thomas***, 23 Miss. 544 (1852).

5

¶14. James contends that Jackie and Jill acted as executrices de son tort by virtue of several conveyances of real property they made between the years of 1984 and 1993. He further contends that Jackie and Jill should be held to the same standard of care as if they had been duly appointed administratrices and that they took a position which was detrimental to other beneficiaries of the estate. Therefore, because of their alleged wrongful actions, the statute of limitations for him to file a claim of heirship should have been tolled.

¶15. This claim was not raised before the chancellor and is therefore procedurally barred. Furthermore, this claim is without merit. To toll the statute of limitations, Jackie and Jill's actions must have constituted fraudulent concealment which prevented James from learning about his possible heirship.

¶16. The facts that James has presented -- that Jackie and Jill wrongfully conveyed property which had belonged to William -- do not amount to fraudulent concealment. James has alleged no affirmative act by Jackie or Jill which prevented him from determining that he might have had a claim. *See **Robinson v. Cobb***, 763 So. 2d 883, 887 (Miss. 2000). Alleged wrongful conveyances of estate property do not toll the statute of limitations for filing a claim of heirship. At all pertinent times James was aware that William had died and that, if he truly was William's illegitimate child, he had a possible claim to William's estate. Alleged wrongful conveyances of estate property did nothing to keep James from filing such a claim.

**IV. WHETHER MISS. CODE ANN. § 91-1-15 (REV. 1994) VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

¶17. James argues that Miss. Code Ann. § 91-1-15(2)[3] and (3)[4] unconstitutionally place more restrictions upon an alleged illegitimate child of a deceased father than upon an alleged illegitimate child of a deceased mother. This argument was not presented to the chancellor and is therefore procedurally barred.

## CONCLUSION

¶18. The chancellor did not err in finding that the time limitations included in Miss. Code Ann. § 91-1-15(c) (Rev. 1994) bar James' claim of heirship. Therefore, the chancellor's judgment is affirmed.

¶19. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

---

[3]Miss. Code Ann. § 91-1-15(2) (Rev. 1994) provides as follows:

(2) An illegitimate shall inherit from and through the illegitimate's mother and her kindred, and the mother of an illegitimate and her kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution. However, if an illegitimate shall die unmarried and without issue, and shall also predeceased the natural father, the natural mother or her kindred shall not inherit any part of the natural father's estate from or through the illegitimate. In the event of the death of an illegitimate, unmarried and without issue, any part of the illegitimate's estate inherited from the natural father shall be inherited according to the statutes of descent and distribution.

[4]As stated previously, Miss. Code Ann. § 91-1-15(3) (Rev. 1994) provides that an illegitimate may inherit from his or her natural father, and the natural father may inherit from the illegitimate *if* (a) the natural parents were married prior to the birth of the child; or (b) before the death of the intestate, there has been an adjudication of paternity or legitimacy; or (c) after the death of the intestate, an adjudication of paternity was made within one year after the death of the intestate or within 90 days of the first notice to creditors.

7