# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00149-SCT

*IN THE MATTER OF THE ESTATE OF THELMA
M. McCULLOUGH, DECEASED: ARLEAN
MORANT LEACH, DANIEL LAWRENCE
MORANT, JR., LINDA ANN MORANT, TOMMY
EARL MORANT, CAROLYN ANN MORANT
FAIRLEY, JOHNNY EARL MORANT, JAMES
MORANT, JR., JESSICA MORANT AND
KENDRIAN COLLINS*

*v.*

*GERALDINE YATES, ADMINISTRATRIX, JIM
HOOD AND STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2008 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ARIN CLARK ADKINS |
| | NATHAN LESTER CLARK, III |
| | LESTER CLARK, JR. |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SHAWN STEPHEN SHURDEN |
| | WILSON DOUGLAS MINOR |
| | PATRICIA ANN CATCHINGS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 02/18/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.　　In this appeal, the appellants seek a determination that they are the heirs at law of Thelma Morant McCullough (McCullough), deceased, in order receive the assets of her estate through representation. At the time of McCullough's death, she left no surviving spouse, children, or parent. While she was an only child born to James Jefferson Morant and Alice O. Bush, McCullough had five half-siblings through the marriage of her father to Rosetta Johnson in 1937. Daniel Lawrence Morant was McCullough's half-brother and the alleged father of the appellants Arlean Morant Leach, Daniel Lawrence Morant, Jr., Linda Ann Morant, Tommy Earl Morant, Carolyn Ann Morant Fairley, and Johnny Earl Morant; and alleged grandfather of James Morant, Jr., Jessica Morant, and Kendrian Collins (herein after collectively "Leach").[1] Leach, her siblings, and her nieces and nephew are the alleged children and grandchildren of Daniel Lawrence Morant, the half-sibling of McCullough.

¶2.　　McCullough died intestate on October 19, 2003. On January 6, 2004, Geraldine Yates filed a petition to open an estate and a petition for letters of administration in the Chancery Court of the First Judicial District of Hinds County, Mississippi. The chancery court issued a decree for letters of administration appointing Yates as the administratrix of the estate of Thelma M. McCullough, deceased (the Estate). On February 3, 2004, Yates filed a petition for determination of heirs in the Chancery Court of the First Judicial District of Hinds County, Mississippi. On February 8, 2005, the chancery court filed a judgment determining heirs in estate. The chancellor determined a number of legal heirs and awarded them their respective shares of the Estate.

---

[1] James Morant, Jr.; Jessica Morant; and Kendrian Collins are the children of James Morant, an alleged, deceased son of Daniel Lawrence Morant.

¶3.    However, on January 18, 2006, pursuant to a petition to close the Estate, the chancery court, on its own motion, reconsidered its February 8, 2005, judgment. Accordingly, the chancery court reset a hearing to determine heirs for the Estate and requested that all parties be noticed of the proceeding. By order, on January 23, 2006, the chancery court, on its own motion, reopened the case. The chancery court also set aside the judgment determining heirs and set a date to conduct a hearing to determine heirs of the Estate.

¶4.    The chancery court issued its order and opinion on the petition to determine heirs on November 28, 2006. The order denied the petition for determination of heirs at law and determined that Leach was time-barred from inheriting through Daniel Lawrence Morant pursuant to Mississippi Code Section 91-1-15 and, therefore, she could not inherit from the Estate. *See* Miss. Code Ann. §91-1-15 (Rev. 2004). Following the chancery court's order, Leach filed a petition requesting reconsideration of the prior order and, alternatively, contested the constitutionality of Mississippi Code Section 91-1-15. Leach later filed an amended petition requesting reconsideration of the prior order, determination and adjudication of heirship in petitioners, or alternatively, contesting the constitutionality of statute. Because Leach challenged the constitutionality of Section 91-1-15, the Attorney General filed a response to Leach's amended petition.

¶5.    After this series of events and a number of hearings, the chancery court issued a final judgment and opinion of the court. In its final judgment, the chancery court determined that Leach had failed to meet her burden of proof that there was sufficient evidence to adjudicate Daniel Morant, Sr., as the putative natural father of Leach and her siblings. Pursuant to Mississippi Code Section 91-1-15, an illegitimate child may inherit from his or her natural

3

parent provided certain statutory requirements are met. *See* Miss. Code Ann. § 91-1-15. The chancery court determined that Leach had failed to prove by any genetic or scientific evidence that Daniel Morant, Sr., was the natural father and that she was time-barred for failure to establish paternity within the time requirements prescribed by Section 91-1-15. Therefore, the chancery court determined that Leach had failed to prove that she and her siblings were the heirs at law of McCullough. The chancery court also determined Leach had failed to prove her constitutional challenge to the validity of Mississippi Code Section 91-1-15 beyond a reasonable doubt. From this January 8, 2008, final judgment and opinion of the court, Leach appeals to this Court. Finding no error, we affirm the chancellor's decision.

## FACTS

¶6.     Thelma Morant McCullough was born November 28, 1911. She died on October 19, 2003, in Hinds County, Mississippi. She married Benjamin McCullough, and they had no children. Benjamin predeceased McCullough.

¶7.     McCullough was the only child of James Jefferson Morant and Alice O. Bush. However, her father, James Jefferson Morant, married Rosetta Johnson Morant in 1937. James Jefferson Morant and Rosetta had five children: Daniel Lawrence Morant; Arlena Morant Shack; James Jefferson Morant, Jr.; David Richard Morant; and Asbury Benjamin Morant. McCullough's parents, James Jefferson Morant and Alice O. Bush, died in 1948 and 1974, respectively.

4

¶8.    Although the record is somewhat unclear, it appears four of McCullough's half-blood siblings died, leaving no children.[2] James Jefferson Morant died on January 8, 1961; Arlena Morant Shack died in 1966; Asbury Benjamin Morant died sometime in 1985; and David Richard Morant died on February 2, 1991. These siblings predeceased McCullough and had no surviving children.

¶9.    The chancery court incorrectly found that two of McCullough's half-blood siblings had left surviving heirs.[3] Daniel Lawrence Morant died on January 27, 1978, and left seven surviving children: Daniel Morant, Jr; Arlean Morant Leach; Linda Morant; Tommy Morant; Carolyn Morant Fairley; Johnny Morant; and James Morant. James Morant, alleged son of Daniel Lawrence, preceded McCullough in death and left three surviving children: James Morant, Jr.; Jessica Morant Lender; and Kendrian Collins. No adjudication of paternity was ever made with regard to the estate of Daniel Lawrence Morant by his alleged illegitimate children after his death in 1978. In fact, no estate was opened after Daniel Lawrence Morant died, because he allegedly had nothing of value at the time of his death.

¶10.    On January 6, 2004, Geraldine Yates filed a petition to open the estate and for a letter of administration for the estate of Thelma McCullough, deceased. On February 3, 2004, Yates filed the petition to determine heirs. The chancery court held that adjudication of the

_____

    [2] The chancery court noted that three of McCullough's half-siblings predeceased her without any children, however, the record indicates that four of her half-siblings died without children: James Jefferson, David, Asbury, and Arlena.

    [3] The chancery court found that two of McCullough's half-siblings had surviving children. However, the record indicates that Daniel Lawrence Morant was the only half-sibling of McCullough to have any children. Daniel Lawrence Morant had seven children. One of Daniel Lawrence's children was named James Morant. This son, James Morant, as the record indicates, was deceased and had three children: James, Jr.; Jessica; and Kendrian.

5

paternity of the illegitimate children of Daniel Lawrence Morant was not done within the statutory limits of Mississippi Code Section 91-1-15(3), and for that reason, the claim to the estate of McCullough was barred. Leach now appeals from that decision.

## DISCUSSION

¶11. In *Dr. K.B. v. J.G.*, 9 So. 3d 1124, 1127 (Miss. 2009), this Court set out the standard of review for chancery matters, stating that a chancellor's finding of fact will not be overruled by the appellate court when it is supported by substantial evidence, unless the chancellor applied an erroneous legal standard or there was manifest error. *Dr. K.B.*, 9 So. 3d at 1127 (citing *Grafe v. Olds*, 556 So. 2d 690, 692 (Miss. 1990)). *See also Mann v. Buford*, 853 So. 2d 1217, 1219 (Miss. 2003).

### I.     Mississippi Code Section 91-1-15

¶12. Leach argues that the chancery court erred by finding that her claim to be adjudicated an heir was time-barred pursuant to Section 91-1-15. Miss. Code Ann. §91-1-15 (Rev. 2004). Leach contends that her claim accrued at the time of her putative aunt's, McCullough's, death in 2003 and not at the time of her putative father's, Daniel Lawrence Morant's, death in 1978. The chancery court determined that Leach had failed to prove by clear and convincing evidence that she and her siblings were the natural children of Daniel Lawrence Morant, therefore, she was unable to inherit from McCullough, Daniel Lawrence Morant's half-sibling, through representation.

¶13. Half-blood siblings may inherit under certain statutory restrictions. *See* Miss. Code Ann. § 91-1-5 (Rev. 2004). Section 91-1-5 states "[t]here shall not be, in any case, a distinction between the kindred of the whole and half-blood, except that the kindred of the

6

whole-blood, in equal degree, shall be preferred to the kindred of the half-blood in the same degree." *Id.* Mississippi law provides for inheritance by collaterals, such as children of half-blood siblings, by representation through the blood relationship of a parent. *See* Miss. Code Ann. § 91-1-3 (Rev. 2004). Section 91-1-3 states:

> When any person shall die seized of any estate of inheritance in lands, tenements, and hereditaments not devised, the same shall descend to his or her children, and their descendants, in equal parts, the descendants of the deceased child or grandchild to take the share of the deceased parent in equal parts among them. When there shall not be a child or children of the intestate nor descendants of such children, **then to the brothers and sisters** and father and mother of the intestate **and the descendants of such brothers and sisters in equal parts, the descendants of a sister or brother of the intestate to have in equal parts among them their deceased parent's share.** If there shall not be a child or children of the intestate, or descendants of such children, or brothers or sisters, or descendants of them, or father or mother, then such estate shall descend, in equal parts, to the grandparents and uncles and aunts, if any there be; otherwise, such estate shall descend in equal parts to the next of kin of the intestate in equal degree, computing by the rules of the civil law. **There shall not be any representation among collaterals, except among the descendants of the brothers and sisters of the intestate.**

Miss. Code Ann. § 91-1-3 (Rev. 2004) (emphasis added).

¶14.   In 1981, Mississippi amended its descent and distribution statute with regard to the inheritance rights of illegitimates. Mississippi Code Section 91-1-15 states:

> 3) An **illegitimate shall inherit** from and through the **illegitimate's natural father and his kindred**, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution **if**:

>> (a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or

>> (b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or

7

(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, **no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child.** This one-year limitation shall be self-executing and may not be tolled for any reason, including lack of notice. If an administrator is appointed for the estate of the intestate and notice to creditors is given, then the limitation period shall be reduced to ninety (90) days after the first publication of notice, if less than one (1) year from the date of the intestate's death; provided actual, written notice is given to all potential illegitimate heirs who could be located with reasonable diligence.

Miss. Code Ann. § 91-1-15 (Rev. 2004) (emphasis added).

¶15.   The law requires that an adjudication of paternity be made within one year after the death of the intestate or within ninety days of publication of notice to creditors. Miss. Code Ann. § 91-1-15. However, in response to the United States Supreme Court decision in *Trimble v. Gordon*, the Mississippi Legislature enacted an amendment to Section 91-1-15 to allow easier access by illegitimates to make claims against an intestate.[4] The amendment included a provision for those deaths occurring prior to its adoption and made an exception for establishing paternity for intestates who died prior to 1981. The statute provides:

---

[4] *Trimble v. Gordon*, 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977). In *Trimble*, the United States Supreme Court addressed the constitutionality of a statute which permitted an illegitimate child to inherit by intestate succession only from his or her mother, not the father, pursuant to the Illinois Probate Act. *Trimble*, 430 U.S. at 763, 97 S. Ct. at 1461-62. The *Trimble* court held that the Illinois statute violated the Equal Protection Clause of the Fourteenth Amendment. *Id*. at 776.

A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and any claim by a natural father to inherit from or through an illegitimate child shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.

Miss. Code Ann. § 91-1-15(3)(d)(ii) (Rev. 2004).

¶16. In order for Leach and her siblings to inherit from McCullough, their putative aunt, through representation, they first had to establish paternity through their putative father, Daniel Lawrence Morant. *See* Miss. Code Ann. §§ 91-1-3 and 91-1-5 (Rev. 2004). Daniel Lawrence Morant died in 1978, and Leach did not try to establish paternity until 2003, after the death of McCullough.

¶17. Leach argues that this Court should find the death of McCullough, not Daniel Lawrence Morant, should determine the date from which adjudication of paternity should begin to run. She relies on three cases to support her argument. While the cases will be discussed below, all the cases cited by Leach are dated prior to the three-year deadline set July 1, 1984, for adjudicating deaths prior to 1981. In addition, paternity was established in all the cases within the July 1, 1984, deadline.

¶18. In *Miller v. Watson*, 467 So. 2d 672 (Miss. 1985), Watson sought to be determined the sole heir at law of her mother, Eunie Miller. *Miller*, 467 So. 2d at 673. Miller claimed to be the illegitimate son of Watson's deceased brother, J.D. Miller, and sought a half interest in the estate of Watson's mother, Miller's alleged grandmother. *Id*. Although Miller had not filed for an adjudication of heirship after the death of his father and was seeking to be

declared an heir of his grandmother, his filing fell within the three years prescribed by the 1981 amendment.[5] *Id*. at 675.

¶19. However, both sides stipulated that Miller was indeed the illegitimate son of J.D. Miller and the grandson of the decedent, Eunie Miller. *Id*. This Court determined that Miller's answer included a cross-petition that sufficiently raised an allegation that he was the illegitimate son of J.D. Miller, which also gave him an interest in his grandmother's estate. *Id*. Further, the action in *Miller* was brought prior to the 1984 deadline. This Court held that the stipulations that (1) Miller was the illegitimate son of J.D. Miller and (2) Miller and Watson were the only two interested parties in the estate, were sufficient to adjudicate Miller as an heir of Eunie Miller's estate. *Id*. In effect, this Court held that Miller's cross-petition and the stipulations were sufficient to prove paternity. *Id*.

¶20. Leach also relied on the pre-1984 case ***Matter of Estate of Kimble***, 447 So. 2d 1278 (Miss. 1984). In ***Kimble***, a granddaughter sought to assert an interest in the estate of Earl B. Kimble, her alleged grandfather, via her deceased mother. *Id*. at 1278. Larsen's deceased mother was the alleged illegitimate daughter of Earl B. Kimble. *Id*. As stated in ***Kimble***:

> Any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and any claim by a natural father to inherit from or through an illegitimate child shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.

---

[5] Miller's father had died prior to 1981, and he was claiming a half interest in the estate of his grandmother through his father.

10

*Id*. at 1280. It is noteworthy that Larsen first sought to prove paternity and then sought to assert a claim against Kimble's estate. *Id*. at 1278. Indeed, this Court determined that Larsen "had a remedy as of July 1, 1981, *contingent upon her establishing* that Earl B. Kimble was the father of her deceased illegitimate mother." *Id*. at 1282 (emphasis added). In other words, Larsen, as the putative granddaughter, had an interest in Kimble's estate only through representation.

¶21.    Leach also cites the pre-1984 case, ***Estate of Kidd v. Kidd***, 435 So. 2d 632 (Miss. 1983), in which Emma Gunn Webber, the putative daughter of Mack Kidd, petitioned to determine heirship. ***Estate of Kidd***, 435 So. 2d at 633. This Court determined that Webber had an heirship claim and not a paternity action. *Id*. at 634. Prior to ***Trimble***, Webber had no cause of action under Mississippi law. *Id*. This Court held that "[a] cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested." *Id*. at 635. Therefore, Webber's cause of action did not accrue until the death of her putative father in 1978. *Id*. This Court held that the cause was for a petition for heirship which accrued at the time of the death of the intestate, Mack Kidd. *Id*. The Court also held that Mack Kidd's death in 1978 subjected the case to the ***Trimble*** decision. *Id*. at 636.

¶22.    More recently, this Court, in ***Mann v. Buford***, 853 So. 2d 1217, 1220 (Miss. 2003), held that an illegitimate son's heirship claim was barred by the time limits established in Section 91-1-15. In ***Mann,*** the alleged illegitimate son of William Henry Mann, who died in September 1981, waited until the death of Mann's widow, Gertrude Mann, before filing a petition to determine heirship. *Id* at 1220. His claim was not filed until January 31, 2000,

11

more than eighteen years after the death of his putative father. *Id*. This Court found that the son's claim was barred, as it should have been filed within the time limits set forth by Section 91-1-15. *Id*.

¶23. The Mississippi Court of Appeals decided a somewhat similar case in *In re Estate of Davidson*, 794 So. 2d 261 (Miss. Ct. App. 2001). Pringle claimed to be the illegitimate daughter of W.H. Davidson, who died intestate in September 1975. *Id*. at 263. She filed a petition to determine heir at law in 1998, after the death of W. H. Davidson's wife, Della Davidson. *Id*. Prior to this action, Pringle had never asserted her claim as Davidson's daughter. *Id*. Pringle did not attempt to bring her claim until the death of Della Davidson, the wife of W.H. Davidson, who died in 1997. *Id.*

¶24. The Court of Appeals stated:

It is true that illegitimate children do have the right to inherit from their natural fathers. *Holloway v. Jones*, 492 So. 2d 573, 574 (Miss. 1986); *Larsen*, 447 So. 2d at 1283; *Trimble v. Gordon*, 430 U.S. 762, 776, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977). Nonetheless, the illegitimate child must prove paternity by clear and convincing evidence. Miss. Code Ann. § 91-1-15(3)(c) (Rev. 1994); *Gusta*, 540 So. 2d at 33; *Larsen*, 447 So. 2d at 1283; *Crosby*, 195 So. 2d at 71; *Hulitt*, 220 Miss. at 832, 72 So. 2d at 206. Further, the child must make his claim to the estate of his *father within one year from the time of his father's death. Miss. Code Ann. § 91-1-15 (Rev. 1994)*. However, Pringle's situation would fit into the amended section of the statute which reads:

A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father . . . . [The claim] shall be brought within three years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.

12

> *Id.* Clearly, Pringle did not bring her claim in the statutorily prescribed time limit and therefore is barred from now bringing this claim over fourteen years late.

*In re Estate of Davidson*, 794 So. 2d at 266 (emphasis added). The Court of Appeals held that Pringle had to have proven, by clear and convincing evidence, her heirship between the time of W. H. Davidson's death in 1975 and July 1, 1984. *Id.* The Court of Appeals barred Pringle's claim for failure to bring suit within the statutory time limit and for bringing the claim more than fourteen years late. *Id*.

¶25. Leach contends that she had no claim until the death of McCullough, as no one can be an heir while that person is still living. *Kimble*, 447 So. 2d at 1282. However, Leach and her siblings had a claim in the estate of their putative father, who died in 1978. Leach and her siblings did not establish paternity after their putative father's death, instead waiting until after McCullough's death in 2003 to establish paternity. Because Daniel Lawrence Morant died in 1978, after the *Trimble* decision and the amendment of Section 91-1-15 by the Legislature, Leach and her siblings had three years from July 1, 1981, or until July 1, 1984, to seek the adjudication of paternity as the natural children of Daniel Lawrence Morant. Any claims to Daniel Lawrence Morant's estate should have been made prior to July 1, 1984.[6] An estate was not opened after Daniel Lawrence Morant's death. It is through their putative father that Leach and her siblings are seeking to assert a claim, through his estate, which they failed to do during the properly allotted time.[7] Instead, Leach waited more than twenty-five

---

[6] Leach claims that there was nothing in the estate of their father upon which to make a claim after his death.

[7] Under Mississippi law, when a person dies intestate, the distribution of the estate is determined by statute. As such, in the present situation, the estate of McCullough would

years before attempting to adjudicate paternity. As such, Leach's claim is twenty-five years past-due and is therefore barred by the statute of limitations set forth in Mississippi Code Section 91-1-15(3)(c). Accordingly, the chancery court did not err in denying Leach's petition to determine heirship.

## II. Constitutionality

¶26. Leach argues that Section 91-1-15 is unconstitutional under the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and she is deprived of a property interest. Leach made general arguments concerning violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution in her petition and amended petition requesting reconsideration of the prior order, determination and adjudication of heirship in petitioners, or alternatively, contesting the constitutionality of statute, and at the September 21, 2007, hearing on the petition. At the hearing, Leach argued more specifically concerning the alleged violation of the Equal Protection Clause. However, Leach did not make a definitive argument concerning the Due Process Clause in terms of substantive and procedural due process until her reply brief on appellate review.

¶27. When this Court considers the constitutionality of a statute, the challenging party is faced with a strong presumption of constitutionality and must prove beyond a reasonable doubt that the statute violates the Constitution. *Hemba v. Miss. Dep't of Corrections*, 998 So. 2d 1003, 1005 (Miss. 2009); *Univ. of Miss. Med. Ctr. v. Robinson*, 876 So. 2d 337,

---

pass to Daniel Lawrence Morant. As he preceded her in death, it would pass to his estate. No claim was made to his estate within the time limits.

14

339-340 (Miss. 2004); ***Richmond v. City of Corinth***, 816 So. 2d 373, 375 (Miss. 2002). Any doubt is resolved in favor of upholding the validity of a statute. ***Robinson***, 876 So. 2d at 339-340. "If possible, courts should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity." ***Richmond***, 816 So. 2d at 375 (quoting ***Jones v. State,*** 710 So. 2d 870, 877 (Miss. 1998)).

### A.     Equal Protection Clause

¶28.    Leach argues that Section 91-1-15(3)( c) controls because her claim accrued at the death of her putative aunt and not that of her putative father. In the event that this Court does not agree, Leach argues that the Court must consider whether Section 91-1-15(3)(d)(ii), which provides for the establishment of paternity of illegitimates who died prior to 1981, is constitutional. In other words, Leach argues that, but for her and her siblings' status as illegitimates, they would be entitled to inherit from McCullough.

¶29.    This Court already has addressed the issue of whether Section 91-1-15 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See* ***Kimble***, 447 So. 2d at 1282-83. In ***Kimble***, this Court found no violation of the Equal Protection Clause. *Id*. at 1283. This Court based its holding, in part, on ***Trimble*** and the subsequent United States Supreme Court case ***Lalli v. Lalli***, 439 U.S. 259, 99 S. Ct. 518, 58 L. Ed  2d 503 (1978).

¶30.    As previously noted, in ***Trimble***, the United States Supreme Court held an Illinois law that did not allow illegitimate children to inherit from their father was unconstitutional. ***Trimble***, 430 U.S. at 776. In its analysis, the United States Supreme Court set the standard

15

of review as being "at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose." *Id*. at 766-67 (quoting *Weber v. Aetna Cas. & Surety Co.*, 406 U.S. 164, 172, 92 S. Ct. 1400, 1405, 31 L. Ed. 2d 768 (1972)). The Court rejected a previous argument to apply a "strict scrutiny" standard. *Id*. at 767. *See Mathews v. Lucas*, 427 U.S. 495, 96 S. Ct. 2755, 49 L. Ed. 2d 651 (1976)). The Supreme Court held that the law denied illegitimates Equal Protection under the Fourteenth Amendment. *Id*. at 776. In coming to its decision, the Supreme Court analyzed the State's proposed interests of (1) promoting legitimate family relationships; and (2) having a procedure for property disposition. *Id*. at 768-770.

¶31.   In regard to the first interest, the *Trimble* Court reiterated that the Supreme Court previously had rejected any argument that "a State may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships." *Trimble*, 430 U.S. at 769. On the first interest, the *Trimble* Court stated:

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual as well as an unjust way of deterring the parent.

*Trimble*, 430 U.S. at 770, 97 S. Ct. at 1465 (citing *Weber v. Aetna Cas. & Surety Co.*, 406 U.S. 164, 175, 92 S. Ct. 1400, 1406, 31 L.Ed. 2d 768 (1972)). The Supreme Court also stated "[t]he parents have the ability to conform their conduct to societal norms, but their illegitimate children can affect neither their parents' conduct nor their own status." *Id*.

16

¶32.   In regard to the second interest, the ***Trimble*** Court acknowledged that the issue of proof of paternity was more problematic than that of determining one's mother. ***Id***. at 770-71.  The ***Trimble*** Court stated:

> The more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally.  We think, however, that the Illinois Supreme Court gave inadequate consideration to the relation between § 12 and the State's proper objective of assuring accuracy and efficiency in the disposition of property at death.  The court failed to consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity.  For at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws.  Because it excludes those categories of illegitimate children unnecessarily, § 12 is constitutionally flawed.

430 U.S. at 770-771, 97 S. Ct. at 1465.  The Court determined that the effect of the statute impacted far beyond its purpose and that "[d]ifficulties of proving paternity in some situations do not justify the total statutory disinheritance of illegitimate children whose fathers die intestate." ***Id***. at 772-73.

¶33.   Subsequent to ***Trimble***, the United States Supreme Court decided ***Lalli v. Lalli***, 439 U.S. 259, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978).  In ***Lalli***, the Supreme Court upheld a far harsher New York law which required that adjudication of paternity be established *before* the death of the father. ***Id***. at 275.  The Supreme Court distinguished ***Trimble*** from Lalli's position because, in ***Trimble,*** a judicial declaration of paternity did not suffice for an illegitimate to inherit from his or her father; rather the father had to acknowledge the child *and* marry the mother in order for the child to inherit. ***Lalli***, 439 U.S. at 266-67.  The New

17

York statute at issue in *Lalli*, Section 4-1.2, required only proof of paternity before the putative father's death and did not require a means to legitimize the child. *Id*. at 267-68. The purpose of the New York statute was different from that of the Illinois statute in *Trimble*. *Id*. at 268. The *Lalli* Court stated:

> The primary state goal underlying the challenged aspects of § 4-1.2 is to provide for the just and orderly disposition of property at death. We long have recognized that this is an area with which the States have an interest of considerable magnitude.

*Id*. at 268 (citations omitted). In *Lalli*, the Supreme Court also stated the State's "interest is directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved." *Id*. "Thus, a number of problems arise that counsel against treating illegitimate children identically to all other heirs of an intestate father." *Id* at 269. The Supreme Court determined that the imposition of the New York statute requiring proof of paternity by illegitimates prior to the death of the putative father was substantially related to an important state interest that it was intended to promote. *Id*. at 275. As a result, the Supreme Court found no violation of the Equal Protection Clause. *Id*.

¶34.    This Court decided *Kimble* in 1984, well after the United States Supreme Court's decisions in *Trimble* and *Lalli* and after the Mississippi Legislature passed the 1981 and 1983 amendments to Section 91-1-15. This Court found no violation of the Equal Protection Clause and stated:

> The 1981 amendment and the 1983 clarification thereof clearly eliminated the "unsurmountable" statutory barrier condemned in *Trimble v. Gordon*, *supra*, while at the same time shortened the limitation period within which to bring a claim and increased the standard of proof to sustain such a claim. In doing so we believe that the amendment in 1981 and clarification amendment in 1983 *will effectively afford the illegitimates equal protection of the law*, while

18

at the same time accomplish the legitimate state interest of (1) avoiding the litigation of stale or fraudulent claims, (2) the fair and just disposal of an intestate decedent's property; and (3) the repose of titles to real property. *Estate of Kidd v. Kidd*, *supra*. Justice will thereby prevail *wherein all may take comfort, legitimates and illegitimates alike, that they will be treated equally under the laws of the State of Mississippi.*

*Kimble*, 447 So. 2d at 1283 (emphasis added).

¶35. Section 91-1-15 does require certain criteria, including an option to prove paternity of any illegitimate children within a restricted period after the putative father's death. Miss. Code Ann. § 91-1-15 (Rev. 2004). These requirements place a higher burden on illegitimate children to inherit from their fathers than legitimate children. However, as the Supreme Court of the United States and this Court both previously have held, the State has a legitimate interest in protecting the family and the estates of the deceased by requiring adjudication of paternity within a reasonable timeframe. *Kimble*, 447 So. 2d at 1283. The purpose of Section 91-1-15 in the context of intestate succession is to (1) avoid litigation of stale or fraudulent claims; (2) cause fair and just disposal of property; and (3) facilitate repose of title to real property. *Id*. Further, the imposition placed on illegitimates in Mississippi is much less severe than the New York statute in *Lalli,* because it provides for the establishment of paternity after the putative father's death for a limited period. Accordingly, Leach cannot prove that Section 91-1-15 is unconstitutional under the Equal Protection Clause and, thus, the chancery court's ruling is affirmed.

### B.     Due Process Clause

¶36. In *Caracci v. International Paper Co.*, 699 So. 2d 546, 558 (Miss. 1997), this Court refused to consider an issue where a party gave a general statement of its position on an issue

19

and failed to brief and give authority for the argument. Here, Leach generally stated in her petition and amended petition for adjudication of heirship that Section 91-1-15 violated the Due Process Clause. However, Leach argued more in terms of the Equal Protection Clause at the hearings. It is not until her reply brief that Leach alleges and provides authority for a violation of both substantive and procedural due process. Nonetheless, we will address both the substantive and procedural due process issues.

**1.    Substantive Due Process.**

¶37.    Substantive due process protects an individual's life, liberty, or property interests against "certain government actions regardless of the fairness of the procedures used to implement them." *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 984 (Miss. 2004) (quoting *Hall v. Bd. of Trustees of State Inst. of Higher Learning*, 712 So. 2d 312, 319 (Miss. 1998); *Univ. of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 536 (Miss. 2000). "The test for a violation of substantive due process is 'whether the governmental action is rationally related to a legitimate governmental purpose.'" *Hughes*, 765 So. 2d at 540 (quoting *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124-25, 98 S. Ct. 2207, 2213, 57 L. Ed. 2d 91 (1978)).

¶38.    Again, this Court has held that Section 91-1-15 serves a legitimate state interest. *Kimble*, 447 So. 2d at 1283. In *Kimble*, this Court held that the State had a "legitimate state interest of (1) avoiding the litigation of stale or fraudulent claims, (2) the fair and just disposal of an intestate decedent's property; and (3) the repose of titles to real property" by implementing Section 91-1-15. *Id.* As a legitimate state interest exists in the adjudication of paternity, Section 91-1-15 can not be said to violate substantive due process.

20

## 2. Procedural Due Process.

¶39. Procedural due process provides for notice and an opportunity to be heard. ***Harris,*** 873 So. 2d 986 (citations omitted). Leach argues in her reply brief that she was denied procedural due process as she was not given a *hearing* to put forth evidence that she and her siblings were the rightful heirs of McCullough, through Daniel Lawrence Morant by representation.[8] She argues here, not so much that Section 91-1-15 is unconstitutional as that it was misapplied, and as such, she was deprived of due process. Leach claims that the chancery court misapplied Section 91-1-15 by barring her from recovery under subsection (3)(d)(ii) pertaining to the time period to establish paternity when the statute, in general, and subsection (3)(c), in particular, do not define the terms "intestate" or "natural father"; and by ignoring ***Kimble*** and ***Miller***.

¶40. Leach can point to no procedural due process violations. She had notice and an opportunity to be heard on her heirship claim. In order to inherit from her putative aunt, she had to establish paternity. She had notice of her putative father's death, and paternity was not established after his death within the required time period. Leach's only avenue of inheritance is through representation, but it requires establishment of paternity.

¶41. There was no need for a hearing to put forth evidence to show that Daniel Lawrence Morant was indeed Leach's father. She should have requested such a hearing more than twenty years ago. A claim for deprivation of procedural due process fails, and the chancery court's ruling is affirmed.

---

[8] Leach does not assert lack of notice as part of her procedural due process claim. She acknowledges that she received notice from the Administratrix.

21

**CONCLUSION**

¶42.   Leach and her siblings failed properly to adjudicate themselves as the illegitimate children of Daniel Lawrence Morant in the time prescribed by Section 91-1-15.  As such, the petition to be determined heirs of McCullough, the deceased, is barred by the time provision of Section 91-1-15.  Miss. Code Ann. § 91-1-15 (Rev. 2004).

¶43.   Additionally, Section 91-1-15 does not violate the Equal Protection Clause or the Due Process Clause of the United States Constitution.  This Court previously determined that Section 91-1-15 did not violate the Equal Protection Clause.  *Kimble*, 447 So. 2d at 1283.  Further, Leach and her siblings have not been deprived of either their procedural or substantive due process rights.  Mississippi has  a legitimate state interest in the legislation propounded in Section 91-1-15, therefore, the statute does not violate any substantive due process rights.  In addition, Leach had notice of her putative father's death and would have been afforded a hearing for adjudication of paternity, however, she failed to make such a petition within the statutory limits of Section 91-1-15.  The decision of the Chancery Court of the First Judicial District of Hinds County is affirmed.

¶44.   **AFFIRMED.**

   **WALLER, C.J., CARLSON AND GRAVES, P.JJ., RANDOLPH AND PIERCE, JJ., CONCUR.  DICKINSON, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR AND KITCHENS, JJ.**

   **DICKINSON, JUSTICE, CONCURRING IN RESULT ONLY:**

¶45.   Because I cannot agree with the majority's construction of Mississippi Code Section 91-1-15, I respectfully concur in result only.  Our analysis of this matter necessarily must begin and end with the plain language of the statute.  *See* Miss. Code Ann. § 91-1-15 (Rev.

2004). Section 91-1-15(3) provides that "[a]n illegitimate shall inherit from and through the illegitimate's natural father and his kindred . . . if . . . [t]here has been an adjudication of paternity after the *death of the intestate*. . . . However, no such claim . . . shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the *death of the intestate . . . .*" Miss. Code Ann. § 91-1-15(3) (Rev. 2004) (emphasis added). I cannot agree with the majority's reading of "the intestate" to mean "natural father." (Maj. Op. at ¶16). The plain language of the statute states that an illegitimate child shall inherit from his *natural father's kindred* as long as there is an adjudication of paternity within one year of the death of the *intestate*. In the case sub judice, "the intestate" from which Leach and her siblings seek to inherit is Thelma McCullough. Leach attempted to establish paternity within a year of McCullough's death. Therefore, Leach's action to adjudicate paternity so as to inherit from Thelma McCullough was timely brought. However, because I cannot say the chancellor committed manifest error in finding Leach and her siblings provided insufficient evidence to support an adjudication of paternity, the judgment of the trial court should be affirmed.

**LAMAR AND KITCHENS, JJ., JOIN THIS OPINION**.

23