

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00044-CV

## IN THE INTEREST OF A.M.R., A CHILD

**From the 21st District Court
Burleson County, Texas
Trial Court No. 30,068**

## O P I N I O N

Stephanie and the unknown father of A.M.R. appeal from separate judgments that terminated their parental rights to A.M.R. Stephanie complains that the evidence was legally and factually insufficient to support the finding that termination was in the best interest of A.M.R. or that she "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child." The unknown father complains that the evidence was legally insufficient for the trial court to have terminated his parental rights pursuant to Section 161.002 and

that he received ineffective assistance of counsel. Because we find no reversible error, we affirm the judgments of the trial court.

A jury trial was conducted, in which Stephanie participated in person and through counsel. The unknown father had an attorney appointed to represent his interests; however, a different attorney appeared on behalf of the unknown father at the trial. The attorney participated in the jury trial and cross-examined various witnesses regarding the unknown father's identity and location.

The jury charge was submitted to the jury with individual questions as to each predicate act alleged and the best interest of the child relating to the termination of Stephanie's parental rights. The jury answered "Yes" to each of the questions submitted. The trial court did not submit any questions and reserved any findings relating to the unknown father without objection by counsel. The trial court signed a judgment that terminated Stephanie's parental rights based on each of the three predicate acts that the jury found to be true and that termination was in the best interest of the child. That judgment purports to be a final judgment reciting that it disposes of all issues and parties.

Approximately two weeks after entry of the first judgment, the trial court signed a second judgment terminating the unknown father's parental rights without reference to the first judgment. Both Stephanie and the unknown father filed motions for new trial. Because the issues raised by Stephanie and the unknown father are entirely distinct from each other, we will address each party's issues separately in this opinion.

In Stephanie's first issue, Stephanie complains that the evidence was legally and factually insufficient for the jury to have found that termination was in the best interest of the child. In Stephanie's second issue, Stephanie complains that the evidence was legally and factually insufficient for the jury to have found that she "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

## STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). If the evidence is sufficient as to one ground, it is not necessary to address the other

predicate grounds because sufficient evidence as to only one ground in addition to the best interest finding is necessary to affirm a termination judgment. *In re N.G.*, 577 S.W.3d 230, 232-33 (Tex. 2019).

The termination judgment reflects that Stephanie's parental rights were terminated based on three predicate grounds: endangering environment (Subsection (D)); endangering conduct (Subsection (E)); and failure to comply with a court-ordered service plan (Subsection (O)). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O). However, Stephanie's issues on appeal challenge only the endangering environment and endangering conduct grounds, but not the failure to complete her service plan. By failing to challenge the finding under Subsection (O), Stephanie has waived any complaint about the sufficiency of the evidence to support that finding. *See id*. § 161.001(b) (requiring only one predicate ground to support termination); *In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam) (stating that "only one ground is required to terminate parental rights"). Because of this, if we determine that the evidence was legally sufficient for the jury to have found that termination was in the best interest of the child, we will affirm the judgment of termination.

However, we are also required to consider the sufficiency of the evidence pursuant to Sections 161.001(b)(1)(D) or (E) if challenged even if the termination is proper as to some other section, therefore, we will also address one of those grounds. *In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019). This is because a finding under either section could be

used in a subsequent termination of parental rights proceeding. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(M).

Although Stephanie raises the issue relating to best interest first, because the evidence as to the predicate act is relevant to our discussion of best interest, we will address the sufficiency of the evidence as to the predicate act before best interest.

## SECTION 161.001(b)(1)(E)

In her second issue, Stephanie argues that the evidence was legally and factually insufficient for the trial court to have found that she committed the predicate act set forth in Section 161.001(b)(1)(E) of the Family Code. Section 161.001(b)(1)(E) allows termination of parental rights if the factfinder finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). An endangerment finding often involves physical endangerment, but it is not necessary to show that the parent's conduct was directed at the child or that the child suffered actual injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Rather, the specific danger to the children's well-being may be inferred from the parent's misconduct alone." *Id.* In our endangerment analysis pursuant to Section 161.001(b)(1)(E), we may consider conduct both before and after the Department

removed the child from her parent. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In general, a parent's conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of that child. *Boyd*, 727 S.W.2d at 531.

In our endangerment analysis, domestic violence and a propensity for violence may constitute evidence of endangerment. *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Additionally, drug use may constitute evidence of endangerment. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Further, a parent's criminal conduct, convictions, or imprisonment are relevant to the question of whether she engaged in endangering conduct. *In re S.R.*, 452 S.W.3d at 360-61. Routinely subjecting a child to the probability that the child will be left alone because a parent is in jail endangers the child's physical and emotional well-being. *See In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.). Finally, we may consider Stephanie's failure to complete her service plan in determining whether her conduct risks endangering the child. *In re M.R.*, 243 S.W.3d 807, 818 (Tex. App.—Fort Worth 2007, no pet.).

**FACTS RELATING TO ENDANGERMENT**

A referral was made to the Department of Family and Protective Services regarding domestic violence in the home of A.M.R. An investigation had been undertaken by law enforcement relating to a report alleging that Stephanie had assaulted her boyfriend Daniel, with whom she was living, and that A.M.R. witnessed the assault.

Stephanie had fled the scene before law enforcement arrived, but Daniel was observed with scratches and red marks on his neck and body. Daniel alleged that there was ongoing domestic violence in the home. Daniel admitted to methamphetamine use two days before the incident but denied that he used it in A.M.R.'s presence.

Stephanie was arrested two days later and a safety plan was entered placing A.M.R. with Daniel's mother, who was to supervise all contact between Daniel and A.M.R. At that time, Daniel was alleged to be A.M.R.'s father. A caseworker for the department met with Stephanie at the jail more than once. During the first visit, Stephanie alleged that Daniel was A.M.R.'s father and that this incident was the first occurrence of domestic violence in the home. Stephanie admitted to using drugs in the past and expressed concern that Daniel was currently using drugs. At the next visit, Stephanie alleged that the father of three of her older children was also possibly A.M.R.'s father and admitted that she also had recently used methamphetamines. After this time, Daniel and his mother stated their intention to return A.M.R. to Stephanie upon her release from jail.

A.M.R. was placed in the department's custody. She was two years old at the time of the removal. A hair test was conducted on A.M.R. which tested positive for methamphetamines. The test results went back 90 days from the date of the test. When asked about the positive result, Stephanie initially denied knowing how it had happened unless it was from smoking methamphetamines when pregnant with A.M.R. Later,

Stephanie stated that it must have occurred when A.M.R. was left with Daniel. Stephanie had been in jail for approximately two weeks before A.M.R.'s removal by the department.

Stephanie was jailed for approximately 90 days and pled guilty to abandoning or endangering a child, A.M.R. Stephanie was placed on three years of community supervision and testified that she thought the assault with bodily injury-family violence charge had been dismissed when she pled guilty to the felony offense.

A family service plan was ordered by the trial court to be completed by Stephanie in order to have A.M.R. returned to her. She completed a psychological evaluation in November of 2020, which the evaluator was unable to score accurately because of significant deception and Stephanie's refusal to discuss her drug use. She did not regularly attend parenting classes or counseling until after a mediated settlement agreement in September of 2021 and had not completed either at the time of the trial. Stephanie was discharged from therapy for non-attendance, even in virtual therapy programs, more than once. She claimed to have completed services but with different providers than those listed in the service plan and did not provide documentation of completion. Stephanie did not complete drug treatment counseling. She refused to sign a release for an MHMR assessment that she had taken.

Stephanie's counselors and service providers testified that Stephanie refused to address her issues with anger, domestic violence, drug use, and grief. Each testified that Stephanie had not made progress in her therapy and classes, which could be dangerous

for A.M.R.'s safety and well-being.

A.M.R. exhibited a lack of attachment to Stephanie and was almost non-verbal when she was placed in foster care. She was easily frightened, especially by men, and would say "No, momma" when she was scared. A.M.R.'s play therapist opined that A.M.R. had been traumatized in her home prior to her removal.

APPLICATION

Viewing the evidence with the appropriate standards, we find that the evidence was legally and factually sufficient for the jury to have found that Stephanie "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Because we have found the evidence sufficient regarding Section 161.001(b)(1)(E), we do not address Section 161.001(b)(1)(D). *In the Interest of H.H.*, No. 10-21-00040-CV, 2021 Tex. App. LEXIS 4225 *1, n.1, 2021 WL 2252707 (Tex. App.—Waco May 27, 2021 pet. denied) (mem. op.). We overrule issue two.

BEST INTEREST

In her first issue, Stephanie complains that the evidence was legally and factually insufficient for the jury to have found that termination was in the best interest of A.M.R. In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors

that have been or could be pertinent in the best interest determination. *Id*. There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing the predicate grounds under section 161.001(b)(1) also may be, and in this proceeding is, relevant to determining the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27-28.

Stephanie contends that the evidence was legally and factually insufficient as to best interest because the department had agreed to not move forward to a final hearing if she started engaging more substantially in therapy and parenting classes as well as maintaining a stable, safe residence a few months before the final hearing. Although Stephanie acknowledges that she did not complete her service plan and had to leave the residence she was fixing up and move to another residence that was not suitable for A.M.R. shortly after the agreement, she contends that the only reason the department wanted to terminate at that time was because the foster parents wanted their relative to adopt A.M.R.

**FACTS RELATING TO BEST INTEREST**

A.M.R. was four years old at the time of the trial and had been in the same foster home for the entire time. She was bonded with the family, and always indicated a desire to return home with the foster mother after visits with Stephanie. The foster mother

testified that her brother and sister-in-law were interested in adopting A.M.R. The foster mother testified that she believed that A.M.R. would do better in a home with no other children, and the foster parents had multiple other children in the home and wanted to continue having foster children placed with them in the future. Her brother and sister-in-law had no children and would not have any other than by adoption. The foster mother's brother and sister-in-law were certified babysitters of A.M.R. and were working to become licensed foster parents so that A.M.R. could be placed with them permanently with a hope of adopting her. A.M.R. had spent time with and was fond of the other family. However, the foster mother testified that if it was determined to be better for A.M.R. for her current foster parents to adopt her that they would do so.

While in the care of the foster parents, A.M.R. had tremendously improved emotionally and they had provided for her medical and physical needs. Prior to her first doctor's visit after being removed by the department, records of only one doctor's visit were found. That visit was from when A.M.R. turned one year old. A.M.R. did not appear to have received any medical care other than that one visit during her lifetime. A.M.R.'s issues regarding speech and her fear of men had improved greatly while with the foster parents and in play therapy. A.M.R.'s therapist testified that A.M.R. showed a "real disconnect" between A.M.R. and Stephanie and that she did not want to talk to the therapist about her mom but loved talking about her foster family. A.M.R. would need continuing counseling, but Stephanie did not present any evidence as to her plans to meet

A.M.R.'s emotional needs if the termination was not granted.

On appeal, Stephanie argues that the only reason for the removal was that she was incarcerated; however, she does not acknowledge that it was her violent behavior in the presence of her child that led to her arrest and incarceration. Stephanie admitted to past methamphetamine use and told the caseworker that a reason that A.M.R. tested positive for methamphetamines might be from Stephanie smoking it while pregnant with A.M.R. Upon her release from jail after A.M.R.'s removal, Stephanie was placed on community supervision for a felony offense where A.M.R. was the victim. Stephanie failed to address any of the issues for A.M.R.'s removal, including her anger issues, violent tendencies, poor relationship choices, past drug use, and instability in homes and employment. Although Stephanie and her sister testified that she had a strong support system in place at the time of the jury trial, that support system had by all appearances done little to assist her during the pendency of the proceedings. Stephanie acknowledges that she did not complete her service plan but blames the department and the service providers for that failure.

Stephanie had multiple providers for therapy throughout the case and had been discharged and reinstated more than once due to her non-attendance. Stephanie blames the pandemic for her inability to complete services, but the providers and the caseworker testified that the providers were willing to meet with her virtually. Stephanie did not really maintain contact or make a significant effort to participate in services until well

over a year after A.M.R.'s removal and very late in the proceedings. At that time, when Stephanie did attend therapy and her other classes, she did not address her issues and made little to no progress, even though she knew that the failure to do so would result in the department setting this proceeding for a final trial where they would seek termination of Stephanie's parental rights.

**APPLICATION**

Reviewing the record using the appropriate standards, we find that the evidence was legally and factually sufficient for the jury to have found that termination was in the best interest of the child. We overrule issue one.

We affirm the judgment of termination of Stephanie's parental rights to A.M.R.

### UNKNOWN FATHER'S APPEAL

The unknown father appeals from a judgment entitled "Order Determining No Father was Identified and Termination of Parental Rights of Unknown Father" after a hearing was conducted by the trial court approximately two weeks after the conclusion of the jury trial and entry of the first judgment as to Stephanie. On appeal, the unknown father argues that the evidence was legally insufficient to support the judgment of termination and that the unknown father received ineffective assistance of counsel. The department argues that the appeal as to the unknown father should be dismissed because his trial counsel did not have authority to file an appeal without the client's knowledge or consent.

Generally, the procedure to terminate the parental rights of an unknown father are set forth in Section 161.002(b)(2)(A) of the Family Code. *See* TEX. FAM. CODE ANN. § 161.002(b)(2)(A). Section 161.002(b)(2)(A) allows for the termination of parental rights of an alleged father if the child is over the age of one, the alleged father has not registered with the paternity registry, and his identity and location are unknown after the exercise of due diligence by the department. *See* TEX. FAM. CODE ANN. §161.002(b)(2)(A). Further, a certificate from the paternity registry is required from any state in which the child may have been conceived or born, if any. TEX. FAM. CODE ANN. §160.421(b).

**PROCEDURAL AND BACKGROUND HISTORY RELATING TO THE UNKNOWN FATHER**

When A.M.R. was removed, it was first believed that Daniel was her father. Stephanie subsequently stated that the father of three of her older children could be A.M.R.'s father. There was no father named on A.M.R.'s Mississippi birth certificate. During the pendency of the case, both Daniel and the father of three of Stephanie's older children were excluded by DNA testing as being A.M.R.'s father. Thereafter, Stephanie refused to divulge the identity of A.M.R.'s father, other than giving the name of a man who allegedly resided in Louisiana. The department checked into the name but could not locate the person. Stephanie stated that the man named was white and based on that description the caseworker concluded that the man could not be A.M.R.'s biological father. Stephanie also stated that she did not know the identity of A.M.R.'s father.

The department filed a motion for substituted service by publication on the

unknown father which the trial court granted. The trial court appointed counsel to represent the interests of the unknown father approximately eleven months before the jury trial. Appointed counsel participated in permanency hearings and questioned witnesses about the unknown father's identity and potential whereabouts.

A different attorney appeared in person to represent the unknown father at the jury trial and for the rest of the trial court proceedings. That attorney questioned witnesses and participated in the jury trial relating to the potential identity and location of the unknown father; however, the trial court reserved any issues relating to the termination of the unknown father's parental rights to be determined at a later date rather than submitting any issues relating to the unknown father to the jury because no report had been filed as to the attorney's efforts to identify or locate the unknown father.

Approximately two weeks after the conclusion of the jury trial, the trial court conducted a hearing at which the appointed attorney also did not appear. The attorney who appeared at the jury trial did appear and argued against the termination at that hearing. The parties discussed the necessity of the certificate from the paternity registry and the trial court stated that it would consider the certificate when filed. *See* TEX. FAM. CODE ANN. §160.422(c). The Texas certificate was filed with the clerk the day of the hearing. Mississippi does not have a paternity registry, so no certificate from a paternity

registry in that state where A.M.R. was born could be obtained.[1] *See* TEX. FAM. CODE ANN. § 160.421(b). The trial court later signed a judgment that terminated the unknown father's parental rights for failure to register with the paternity registry pursuant to Family Code Section 161.002(b)(2)(A). *See* TEX. FAM. CODE ANN. § 161.002(b)(2)(A).

After the hearing, but prior to the signing of the judgment as to the unknown father, counsel that appeared at the jury trial and the hearing for the unknown father filed a motion for new trial, notice of appeal, and a motion to withdraw. Two days later, the trial court signed the judgment, discharged that attorney from his duties, and granted the motion to withdraw but did not appoint a new attorney to represent the unknown father on appeal. Five days later, the department filed a motion to bar the attorney from appearing on behalf of the unknown father and to strike his pleadings due to a lack of "authority." Eleven days later, the trial court entered an order that granted the department's motion, denied the motion for new trial and appeal, and stated that his counsel was precluded from any additional filings since the withdrawal had previously been granted. Because the trial court does not have jurisdiction to dismiss the appeal that was prematurely, but timely filed, the appeal remained. In order to proceed with the appeal, this Court abated the proceeding for the appointment of counsel to prosecute the

---

[1] We have found no statutory paternity registry authority in Mississippi. Rather, the only method for an alleged father to assert paternity outside of a court proceeding is set forth in Mississippi Code Annotated Section 93-9-28 (Rev. 2013), which requires a mother and alleged father to sign a voluntary acknowledgement of paternity while at the hospital within 24 hours after the birth of the child, and the signing and notarizing of the form results in the addition of the father to the birth certificate of the child. *See Prout v. Williams*, 55 So. 3d 195 (Miss. App. 2011). No father is listed on the birth certificate of A.M.R.

appeal on behalf of the unknown father, and counsel was duly appointed.

**DISMISSAL**

The department argues that the appeal relating to the unknown father should be dismissed as unauthorized because the unknown father is an unknown person and could not have authorized the appeal. Neither party has provided this Court with any authority relating to the authority of an attorney appointed to represent an unknown father's ability to file an appeal on the unknown father's behalf.[2] The notice of appeal was filed prematurely in that it was filed prior to the signing of the judgment relating to the unknown father. That judgment also included a provision that removed the attorney from representing the unknown father. However, at the time the notice of appeal was filed, counsel was still properly representing the unknown father, notwithstanding that at the time the notice of appeal became effective, counsel had been removed. *See* TEX. R. APP. P. 27.1(a).

While we recognize that the unknown father did not personally authorize the appeal, that does not mean that an attorney that is appointed to represent that person is required to stand by and allow an improper termination judgment to be rendered while they are still representing that party. Indeed, that would potentially be ineffective

---

[2] Substantively there is little difference between this situation and an appeal by an appointed attorney that has lost contact with the parent but nevertheless pursues an appeal on that person's behalf. *In the Interest of C.P.*, No. 10-19-00108-CV, 2019 Tex. App. LEXIS 6301, 2019 WL 3331118 (Tex. App.—Waco July 24, 2019 no pet.) (mem. op.).

assistance on that attorney's part. The role of the attorney ad litem is to ensure that the department and the trial court comply with the relevant laws and due process to ensure that the unknown father's rights are not ignored or violated. Because of that, if an attorney charged with representing a party believes that the trial court has improperly granted the termination of the unknown father's parental rights at a time when that attorney is still charged with the duty of representing that party, then that attorney has the right, if not the duty or obligation, to seek whatever legal remedies are available to challenge those errors. *See* TEX. FAM. CODE ANN. §107.016(2).

Generally, an attorney is appointed to represent an unknown father pursuant to Family Code Section 107.013(a)(3) and that attorney's duties are set forth in Section 107.014(a). *See* TEX. FAM. CODE ANN. §§ 107.013(a)(3); 107.014(a). Counsel appointed to represent the interest of a parent whose identity or location is unknown is "only" required to:

> (1) conduct an investigation regarding the petitioner's due diligence in locating the parent;
> (2) interview any party or other person who has significant knowledge of the case who may have information relating to the identity or location of the parent; and
> (3) conduct an independent investigation to identify or locate the parent, as applicable.

TEX. FAM. CODE ANN. §107.014(a). If the attorney is unable to identify or locate the unknown parent, that attorney "shall submit to the court a written summary of the attorney ad litem's efforts to identify or locate the parent with a statement that the

attorney was unable to identify or locate the parent" and upon receipt of that "required" summary, the trial court "shall discharge the attorney from the appointment."  TEX. FAM. CODE ANN. §107.014(e).

However, the attorney appointed to represent the unknown father who appeared at each hearing prior to the jury trial did not comply with the requirements of the statute by filing a written summary.  If he had done so, the trial court would have been within its authority to discharge the attorney and the attorney would have been without the authority to pursue any further remedies.  However, since no written report was filed that led to the discharge of the attorney, the attorney was required to proceed until relieved of his obligations, which he did, including filing a notice of appeal to correct what he presumably perceived to be the erroneous termination of the parental rights of the unknown father, which was based at least in part upon his own failure to comply with the statute.  Because of this, we will address the contentions raised by counsel appointed to represent the unknown father on appeal.

### SUFFICIENCY OF THE EVIDENCE

The unknown father argues that the evidence was legally insufficient for the trial court to have terminated the parental rights of the unknown father because no certificate of a search of the paternity registry was filed with the trial court.  A supplemental clerk's record filed with this Court after the filing of the unknown father's brief shows that the Texas certificate was filed with the trial court on the same day as the hearing conducted

by the trial court, and several days before the judgment terminating the rights of the unknown father was signed. *See* TEX. FAM. CODE ANN. §160.422(c).

Section 161.002(b)(2)(A) allows for the termination of parental rights of an alleged father of a child over the age of one who has not registered with the paternity registry whose identity and location are unknown after the exercise of due diligence by the department. *See* TEX. FAM. CODE ANN. §161.002(b)(2)(A). The unknown father does not contend that the department did not exercise due diligence in attempting to locate the unknown father. Rather, counsel argues that the failure to file the certificate renders the evidence legally insufficient.

Because there was a certificate from Texas, and no certificate could be procured from Mississippi because they do not have a registry, we find that the evidence was legally sufficient for the trial court to have terminated the rights of the unknown father pursuant to Section 161.002(b)(2).[3] We overrule unknown father's issue one.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

The unknown father's second issue alleges that the unknown father received ineffective assistance of counsel because neither his initial counsel nor the attorney who appeared at trial filed the written report required by Section 107.014(e). Parents and

---

[3] The unknown father discusses Louisiana and a man whose name Stephanie had given as a potential father who resided in Louisiana; however, we have found no evidence that A.M.R. was potentially conceived in Louisiana. Because of this, no paternity registry search from Louisiana was required. *See* TEX. FAM. CODE ANN. §160.421(b).

children, as parties to a government-initiated suit to terminate their parental rights have a right to effective assistance of counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). Claims of ineffective assistance of counsel in parental-termination cases, as in criminal cases, are governed by the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *In re D.T.*, 625 S.W.3d 62, 73 (Tex. 2021). "First, the [parent] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the [parent] must show that the deficient performance prejudiced the defense." *Id*. A party claiming ineffective assistance of counsel must satisfy both prongs of the *Strickland* test to succeed. *Id.*

In order to prevail on the second prong of *Strickland*, in showing that the alleged error prejudiced the defense, it was necessary for the unknown father to show that, but for the alleged error on the part of the unknown father's counsel, the result of the proceeding would have been different. However, the unknown father's appointed counsel and the attorney who appeared at trial each participated diligently in the hearings and the trial, questioning witnesses regarding the identity and location of any potential father. The record is silent as to any searches the attorneys may have made outside of trial; however, it was the obligation of the unknown father to prove that the result of the proceeding would have been different. Indeed, had the attorneys filed the written report, their participation in the further proceedings might not have taken place because the trial court could have discharged them from their representation. We find

that the unknown father did not prove the second prong of *Strickland*, and thus, the ineffective assistance of counsel issue cannot be sustained. Because we have found that the second prong was not established, we need not address whether the failure of counsel to file the mandatory written summary pursuant to Family Code Section 107.014(e) is sufficient to meet the first prong of *Strickland*. We overrule issue two.

Having found no reversible error as to the unknown father, we affirm the judgment of the trial court relating to the termination of the parental rights of the unknown father.

## CONCLUSION

Having overruled each of the issues of Stephanie and the unknown father, we affirm the judgments of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed July 20, 2022
[CV06]

